# A COMPLAINT UNDER THE CIVIL RIGHTS ACT
## 42 U.S.C. § 1983
### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF LOUISIANA

FILED
U.S. DIST COURT
___ DIST. OF LA

2011 JAN 26  P 1:53

SIGN___
BY DEPUTY CLERK

**ANNIE MAMON**

# 356519
Inmate (DOC) number

**VERSUS**

**JAMES LEBLANC, SECRETARY, ET AL**, individual capacity + official capacity
**DEPARTMENT OF PUBLIC SAFETY & CORRECTIONS;**
**HOWARD PRINCE, WARDEN,** individual capacity + official capacity
**HUNT CORRECTIONAL CENTER**
**JAMES ROGERS, WARDEN,** individual capacity + official capacity
**LOUISIANA CORRECTIONAL INSTITUTE FOR WOMEN**

I.   **Previous Lawsuits**

A.   Have you begun other lawsuits in the state or federal court dealing with the same facts involved in this action or otherwise relating to your imprisonment? Yes (X) No ()

B.   IF your answer to A is yes, describe lawsuits each in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.)

1. Parties to this previous lawsuit
   Plaintiff(s): Annie Mamon

   Defendant(s): James Leblanc, Secretary,
   Department of Public Safety & Corrections & et al

2. Court (if federal court, name the district, if state court, name the parish)
   19TH Judicial District Court

3. Docket number: 593,623, Section "24"

4. Name of judge to whom case was assigned: _____

5. Disposition (for example: Was the case dismissed? Was it appealed? Is it still pending?):    Still pending

6. Date of filing lawsuit: August 2010

7. Date of disposition: Still pending

C. Have you had any previous filed federal lawsuits or appeals, whether or not related to the issues raised in this complaint, dismissed by any federal court as frivolous, malicious, or for failure to state a claim for which relief can be granted? Yes () No (X)

If your answer is yes, list the civil action numbers and the disposition of each case. You must identify in which federal district or appellate court the action was brought.

---

II.    **Place of present confinement**: Louisiana Correctional Institute For Women, Post Office Box 26, St. Gabriel, LA  70776

A. Is there a prisoner grievance procedure in this institution?  Yes (X) No ()

B. Did you present the facts relating to your complaint in the state prisoner grievance procedure?  Yes (X) No ()

C. If your answer is Yes:

1. Identify the administrative grievance procedure number(s) in which the claims raised in this complaint were addressed. LCIW-2010-114; LCIW-2010-089; LCIW-2010-153; LCIW-2010-201; LCIW-2010-202; LCIW-2010-223;LCIW-2003-153; LCIW-2001-60, LCIW-2008-278, & litigation proceedings for _Clara Harris v. Department_, December 13, 2005; Sandra Cordero's ARP and 19th Judicial District Court filings concerning this issue.

2. What steps did you take? 1st and 2nd step.  Then filed a Judicial Review with the 19th Judicial District Court

3. What was the result? Denied on the 1st and 2nd steps. Still pending in the 19th Judicial District Court.

D. If you answer is No, explain why not:

_____

_____

## III. Parties

(In Item A below, place your name in the first blank and place your present address in the second blank. Do the same for additional plaintiffs, if any.)

A. Name of plaintiffs(s) Annie Mamon
   Address: Louisiana Correctional Institute For Women, Post Office Box 26,
          St. Gabriel, LA 70776

In Item B below, place the full name of the defendant in the first blank, his official positioning the second blank, and his place of employment in the third blank. Use Item C for the names, positions, and places of employment.

B. Defendant James LeBlanc is employed as Secretary
   At the Department of Public Safety & Corrections
C. Additional Defendants: Howard Prince, Warden, Hunt Correctional Center; James Rogers, Warden, Louisiana Correctional Institute For Women

## IV. Statement of Claim

State here as briefly as possible the facts of your case. Describe how each defendant is involved. Include also the names of other persons involved, dates, and places.

First, Sixth, and Fourteenth Amendments were violated.

The Department and LCIW is incorrect in their assumption in that Plaintiff did not prove the merits of her claim in that she was denied access to the Courts due to incompetency of counsels for the following reasons: The Honorable 19th Judicial District Court in _Princess LaCaze v. Johnnie Jones_, Number 510,447 Division "D" stated,

> "This Court shares the concern of the Petitioner, and notes that additional improvements would be beneficial to all, and if the inadequacies adversely impact a particular person by preventing the filing of a meritorious complaint/pleading or results in its dismissal, the issue may be re-raised in a new administrative complaint. But regardless of the fact that this Court might have decided the issue differently than the Department, unless the decision violates the Petitioner's rights, which has not been shown in the record, this Court is required to affirm the Department's decision."

This ongoing matter resulted in Plaintiff being time barred from the courts due to the incompetency of inmate counsel, Edna Gibson. In LaCaze it was

specially argued that the lack of space, books, and failure to abide by policy/regulation and established case law hindered access to courts. (Exhibit A).

On the other hand in *Deidre Pierre v. James LeBlanc et al.*, Civil Action No. 10-618-JJB-SCR, this Honorable Court through Magistrate Judge Riedlinger is currently determining matters of the same. Mr. LeBlanc, Secretary of the Department, Wardens, James Rogers, and Howard Prince are all aware of these matters due to prior filings and or verbal conversations/correspondences.

Inmate counsel, Gibson filed my original habeas corpus into the federal court and failed to do the following:

- Did not send any exhibits to prove the claims were exhausted or to prove the merits of the claims;
- Did not include 11 claims out of the direct appeal;
- Did not litigate all the claims from the PCR;
- Did not submit a forma pauperis;
- Improperly filed an extension of time to the Second Circuit Court of Appeal on the PCR;
- Did not file in the proper court (the Notice of Appeal was filed to the Southern District of TEXAS instead of New Orleans);
- The writ was due on 5-27-05 but was not properly prepared and sent to the court until 7-8-05;
- Improperly filed a Motion To Reconsider the denial of COA which cannot be filed in the federal courts; and
- Added a claim in the COA that had never been litigate prior to the COA filing. (Exhibit C)

Furthermore newly discovered evidence was placed in a federal objection when it fact it must be placed before the trial court within one year from discovering the newly discovered evidence. This issue is now lost due to the time bar. Plaintiff had only one year to file any proceedings to the federal court for the issue to be heard. Plaintiff is now time barred.

Inmate counsel, Gibson never informed me of what happened with my case. It took another inmate counsel, Deidre Pierre to review my case and inform me of such. Inmate counsel, Pierre has since been classified out of the library. Plaintiff requested her continued assistance on my case but was denied. (Exhibit B). This has been an ongoing problem concerning the law library, see previously filed ARPs, LCIW-2003-153; LCIW-2001-60, LCIW-2008-278, & litigation proceedings for *Clara Harris v. Department*, December 13, 2005; Sandra Cordero's ARP and 19th Judicial District Court filings concerning this issue. LCIW-2010-089; LCIW-2010-153; LCIW-2010-201; LCIW-2010-202; LCIW-

2010-223. It is likely that due to the severity of the mess-ups by Gibson, I may very well never get out of prison.

Plaintiff has now been incarcerated for nineteen (19) years and is currently suffering from the after effects of having both kidneys and adrenaline glands removed due to polycystic kidney disease and cancer resulting in extreme high blood pressure. Plaintiff has been on life support five times in five months. Plaintiff has been going on several hospital trips, placed on several medications, and has mandatory kidney dialysis three times a week. Plaintiff is constantly in pain and unable to work causing her to be unable to help support myself through incentive pay, since she is always at dialysis or the hospital.

LCIW made a determination on the matter without properly investigating Plaintiff's cause. The decision by Asst. Warden/Supervisor Kennedy is biased as she was the over the library as well as classification and she rendered the decision on Plaintiff's ARP. Kennedy was directly involved in this matter and was conferring with Pierre on my case. When the matter arose, Kennedy and Asst. Warden Moore classified Pierre out of the law library after filing of an ARP against matters of this sort on March 11, 2010. See ARP LCIW-2010-153 and LCIW-2010-089. After the said filing Plaintiff conferred with Deputy Warden Travis, at which time, Travis approved Pierre to work on Plaintiff's case with LaCaze. LaCaze verified Pierre's legal findings as true. LaCaze and Pierre have filed an application and memorandum in support for post conviction relief in an attempt to remove the time bar that was placed on Plaintiff due to LCIW's inmate counsel's incompetency. In addition, when LaCaze is off duty and not at work, Pierre has no access to the computers to work on my case or to do research for up-to-date law, statutes and cases as computers are only allowed to be manually used by sign language, clubs, counsel substitutes, and general workers.

Plaintiff did not "suggest" newly discovered evidence was not submitted but it was submitted in the wrong court and now it is time barred. Pierre found the court's decision when reviewing Plaintiff's case. Plaintiff could not make meaningful use of the law library on her own behalf, as she has not been trained as such.

Counsels selected by the Warden are trained for doing such and Gibson is a veteran counsel. This veteran counsel was the "additional assistance provided to help whom in turn works/trains/studies under one other "veteran counsel" who cannot use the Criminal Code & Procedure (Marjorie Braggs). Several counsels have been such for over ten years. Had counsels performance been monitored in accordance with policy/regulation, so many ARP's would not have been filed; so many would not have been harmed or had to resort to assistance outside of the law library. (See previous ARPs mentioned including LCIW-2010-153, LCIW-2010-60, LCIW-2010-089, LCIW-2008-278 and *Sandra Cordero v. DOC*; sensitive

issue ARP filed with the 19th Judicial District Court for Pierre bearing Civil # C590543). Gibson never told Plaintiff there was a "problem" nor could Gibson even assist her in accordance with policy or regulation as Gibson filed papers in a **TEXAS** court when all filings are with the Louisiana courts. Gibson even sent paperwork to incorrect addresses.

In further support, offender Taneshia Taylor was denied pauper status as "senior counsel and paralegal" Bobbie Johnson filed into the 14th Judicial District Court a forma pauperis using Civil Code of Procedure 5181-5188 on a criminal matter.

It's apparent counsels cannot use the basic Criminal and Civil Code of Procedure let alone the Louisiana Rules of Court. The legal program did not get this way over night supporting that supervisors as well are not monitoring anything or she/they would know that for some counsels in the law library, no training would help them as they are simply uneducated and cannot write a simple legal letter. Furthermore the Department does not provide adequate training for counsels nor does the Department have strict criteria in the selection of jailhouse lawyers. The work area that counsels are required to work in has no privacy for counsel/client communication and is combined with the general library where numerous activities take place such as, club newsletter, club computer, clothing and hobby craft catalog viewing, sign language program being on legal computers, loud music being played on two different radios, beauty shop related matters/inventories, among other things being held where counsels work.

Since policy basically states counsels don't have to do legal work but only assist/inform clients, this allows a breakdown in the access to the courts for offenders in need of legal help. Practice makes close to perfect. Pursuing Plaintiff's legal defenses under a 5 to 10 year plea bargain, IEAOC, Batson (all white jury), "*Battered Woman's Syndrome*" and more are forever lost due to the state of LCIW's law library on offenders and staffs part especially since this "practice" has been allowed to go on this way for so long. If Gibson couldn't timely or properly file writs then certainly she could not advise Plaintiff or anyone else of such. (See B-05-004) Gibson never said she didn't know what she was doing to say she has been counsel for many years. In addition, Gibson handled my case longer than July 2002-2005. Since Gibson did not keep documentation such as form A's/B's or logging in logbook, this determination couldn't be properly made. (Exhibit _C_ ).

Kennedy states when matters are brought to supervisors, it's investigated and proper action is taken. Pierre brought my situation to the supervisor's attention as well as to Kennedy and Moore's around February 2010. The only action taken was classifying Pierre out of the library and deleting her legal work in reference to suit on this matter. Pierre filed an ARP on the matter, LCIW-2010-153. Plaintiff did request Pierre continued assistance but was denied so its not that she cannot

function as counsel. Staff refuses to let Pierre help for retaliatory reasons. Plaintiff should not have to suffer anymore on account of counsels or staff. Nothing concerning Plaintiff's legal woes was investigated until she filed an ARP through new counsel. To this day, Gibson still handles legal matters of this caliber and the problem is still apparent. (See Dawn Hargrave habeas and DB appeals, and restitution appeal that recently filed.) Even after offenders complain about the same counsels messing up their legal work or their incompetencies, LCIW/Hunt Administration fails to remove the counsels but instead place the caseload on counsels who already have a heavy caseload.

As for April 8, 2010, taking Plaintiff's legal work off of computer is untrue. On March 17, 2010, Mamon's legal work was moved illegally from Pierre's account to Gibson's account. (See 3-05-001 & ARP LCIW-2010-089) After complaints, Administration did it again removing Plaintiff's legal work from Gibson's account and placing it on LaCaze's account. On May 17, 2010, LaCaze received legal work from Gibson when Gibson should have never had any of Plaintiff's papers since Gibson relinquished her case. Pierre should have been the only one to have Plaintiff's legal work. In order for Gibson to have such, she would have had to either keep some, lying to Plaintiff about giving it all back or taking it out of Pierre's legal drawers while Pierre worked on Plaintiff's case since cabinets don't lock. The library supervisors are not trained in law, have numerous administrative duties, which limits her from properly being able to monitor the library. This is why cameras were placed in the designated areas.

Mamon is indigent and cannot afford a lawyer. As a counsel, Gibson was still obliged to **properly** assist Mamon. Had Gibson properly and timely filed writs, then and only then could a motion for appointment of counsel be filed. Counsel never ever filed for one probably because Gibson does not know how due to incompetency. Counsel did write attorneys but no luck. Due to the breakdown of access of the courts, counsel must be supplied by the State, LCIW/DOC. Law supports that when a prison system program fails such as law libraries, attorneys must take over cases. Said attorneys (even pro bono) can come in to handle cases further properly training counsels.

Policy states counsels are trained by senior counsels however Gibson is the senior counsel. If Gibson's work ethics are of this caliber then one can only imagine the state of other counsels. Records from educational testing in Vo-Tech supports such as most counsels testing score are extremely poor ranging a 5th grade educational level for senior counsels. The same can be proven for Braggs, the only other senior counsel who gave incorrect legal information to an offender in lockdown. Hours later the offender committed suicide (9-23-09).

LCIW failed to respond to all aspects of ARP. Pierre started preparing this ARP that has the date of incident March 3, 2010, yet filed April 7, 2010, by

LaCaze. On March 11, 2010, Pierre was classified out of the law library as a way to prevent her from shedding light on what's been going on with the law library and client's cases. Mamon nor any other offenders should have to suffer and incompetent counsels must be removed from the law library to prevent further harm. Preserve and review cameras in academic building and old chapel and all prior ARP's against the law library be attached to these pleadings.

V.    **Relief** <u>State briefly exactly what you want the court to do for you.</u> Make no legal arguments. Cite no cases or statutes. Attach no exhibits.

Compensatory and punitive damages, mental and emotional damages and any other relief this Court deems necessary. The Department of Corrections revamps their legal training and extend the amount of legal training needed per year until counsels are adequately trained. Raise the bar for job as a counsel in law libraries. Attach all regulations and policies relevant to the library from 2000 to 2010. Attach LCIW Regulation 3-05-003. Assess all Court cost to the Department. Attach/obtain my medical records. That non-counsels such as Pierre not be restricted from computer usage and training as current jailhouse lawyers are privileged with. All past, present, and future medical expenses be reimbursed to me and assessed to the Department. Train the library supervisor on law. That no retaliation be taken against me by any offender or former staff member, as Trulinda Augillard who was the library supervisor indeed after learning of my ARP filing, Augillard approached me on my job in the command center asking me if Pierre prepared. I reported this to D.W. Travis immediately.

VI.   **Plaintiff's Declaration**

1. I understand that I am prohibited from bringing a civil action in forma pauperis if, while I was incarcerated or detained in any facility, I have brought three or more civil actions or appeals in a court of the United States that were dismissed on the grounds that they were frivolous, malicious, or failed to state a claim upon which relief was granted, unless I am in imminent danger of serious physical injury.

2. I understand that even if I am allowed to proceed in forma pauperis, I am responsible for paying the entire filing fee and any costs assessed by the Court, which, after payment of the partial initial filing fee, shall be deducted from my inmate account by my custodian in installment payments as prescribed by law.

3.  I understand that if I am released or transferred, it is my responsibility to keep the Court informed of my whereabouts and failure to do so may result in this action being dismissed with prejudice.

Signed this _____1_____ day of _____Jan_____ 20 _11_.

_Annie Manion_
Signature of plaintiff(s)

ADMINISTRATIVE REMEDY PROCEDURE

Clara Harris #391168                                              12-13-05
Aquarius

The LCIW library is inadequate for inmate counsel substitutes to aide the
population.  The library needs current law books, equipment and supplies,
legal training, and more space for counsel substitutes to effectively do
their jobs.

To date, the library has received no up-dated law books for the exception
of one 2005 Louisiana Code of Criminal Procedure which is kept in the
supervisor's desk to be checked out by counsel substitutes and other inmates
when needed.  This issue was previously addressed in LCIW-2003-153 Second
Step response, and the 19th Judicial District Court Docket number 510,447
Division A and D, Sections 24 and 21.  Other filings include:  490447 "D",
ARP-LCIW-01-60.

Angola, Hunt, DCI, and WCI all have West Law which includes Shephardizing,
new rulings, legislative tracking and more.  The LCIW counsel substitutes
are strictly limited to computer usage due to computers not properly working
(locking up), inability to print cases, inadequate working hours, and lack
of training.  As of this date (12-20-05), counsel substitutes have only
received two (2) hours of the mandatory twenty four yearly training hours
as mandated by regulation.

In addition, the lack of working space and inadequate working hours are
not conducive to the counsel substitutes effectively performing their jobs.
Some time ago, Richard Stalder visited the LCIW library and mentioned the
shortage of space.  Since then, the law library has decreased in counsel
substitutes and decreased in space by ½ its size.  The library is far from
being handicap assessable or in compliance with Fire Marshal Standards.
The comparison from 2003 to now are as follows:

| 2003 | 2005 |
|------|------|
| 1081 sq. feet in floor space | 744 sq.feet |
| 200 sq. feet for bookshelves | 86 sq. feet |
| 45 sq. feet for filing cabinets | 53.35 sq. feet |
| 50 sq. feet for supervisors work area | 49 sq. feet |
| 30 sq. feet for library checkout | 24 sq. feet |

After taking into account placement of tables, desks, shelves,  and cabinets,
there is approximately 374 square feet left in which to move around in the
library.  This excludes not only the 17 inmates and supervisor who work
there, but also the inmates on the compound who come in to check out books,
utilize the reference books, and those who come to work with their counsel
substitute.  It remains very difficult to speak at least semi-privately
with the clients, and more and more difficult to concentrate with the
crowding and the subsequent noise level.  To better illustrate the facts,
a 2005 sketch of the law library reveals the following:

Exhibit A

Inadequate working hours and staffing also affect the library deficiencies. Hours of operation are inconsistent and do not meet the LCIW regulation #3-05-001 which states:

> **"The library shall be open seven days a week, 8:00 a.m. until 4:30 p.m. During the day, it shall remain open at all times."**

The library hours are 10:00 a.m. - 6:30 p.m. during the day light savings time and 8:00 a.m. - 4:30 p.m. from October to April. However, staffing deficiencies, training sessions, illness, vacations, bathroom and lunch breaks, holidays/holiday decorating, every pardon and parole board, Risk Review Panels, revocation hearings, counting procedures, special hearings by satellite, and waxing of floors cause the library to be closed on a regular basis. This can easily be verified by the log book which inmates must sign prior to entering the library and before exiting the library. When the library is closed, inmates can not sign in and out. Time lapses in signing in and out of log books will also show the library closures. Exhibiting such would be impossible as inmates are not allowed to have LCIW documentation in their possession, however the court can request/subpoena such.

LCIW is in violation of Regulation #5-05-001 I/M Comprehensive Library Services Program (effective 2-28-05) which states "...There shall be at least 1 counsel substitute for every 100 inmates who shall also assist inmates in special housing units..." There are currently nine counsel substitutes available to the compound. In addition, there is one "special" part time counsel substitute who handles the legal concerns of the death row inmate (Antoinette Frank), however, she has been in the hospital. Therefore, the law library is short of 3 full time counsel substitutes per LCIW regulation for the 1103 inmates present on the compound. I will also add that even if LCIW had the proper amount of counsel substitutes per regulation, LCIW's library does not have the space to put new counsels as some counsels either do not have typewriters or no space is available due to the "down sizing" of the library space. Law books are not allowed to be checked out and inmates are unable to read the law books due to the lack of space in the library and noise levels. I will further add that the library services includes a general library in which there are seven general library workers for the compound. In essence, I point to ARP First Step Response #LCIW-03-153 which states "...additional improvements to alleviate space concerns are presently under consideration..." In spite of LCIW staff knowing the law library is and has been inadequate for quite some time, the matter has only gotten worse making this situation "deliberate and malicious", violating my constitutional right to access to the courts. See **Bounds v. Smith**, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed2d 72 (1977); **Lewis v. Casey**, 518 U.S 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996).

LCIW inmates are entitled to the same quality legal assistance as the men in other DOC institutions. This form of discrimination inhibits each inmates right to current law and quality representation in their legal affairs. For example, the men's facilities prepare all legal documents on computers, and specialize in various areas of law while LCIW counsel substitutes **must** do the following for one week at a time: legal rounds, disciplinary court, disciplinary court relief, as well as other job duties on top of studying

law and preparing briefs to the courts. Computers save time and expenses with ribbons and repairs. Computers would not have to be sent out of the institution for repairs because there is an on site computer personnel. There has been no documentation of misuse of any computer when the library had a computer. Any operations on computer could easily be monitored if LCIW had enough security working at the facility. See **Yates v. Stalder**, 217 F.3d 332 (5th Cir. 2000).

Although the library received 3 work processors, all counsel substitutes work the same hours eliminating the opportunity of other counsels that don't have typewriters/word processors time to prepare legal work without a tremendous amount of time surpassing.

All of the above are on-going issues that have been discussed at every library meeting since the library has been established at LCIW. They have yet to be resolved. The population increased while the law services decreased in every aspect.

Due to the above reasons, a non-counsel prepared my application for post conviction relief. During that time, non-counsels were allowed to aide inmates in pleadings, as non-counsels are being allowed to aide with inmate legal proceedings at this present time in the law library. My case was eventually assigned to a counsel. Writs were prepared, however the courts informed counsel that she did not properly prepare the document and exhibits. (See Exhibits A) Never once did counsel properly obtain documentation needed to support the claims. She further filed a Writ of Habeas Corpus under a Motion to Vacate Sentence Based Upon An Invalid Plea. Any properly trained counsel should know that according to the Louisiana Code of Criminal Procedure Article 559 (A), this form of motion must be filed **prior** to the acceptance of any plea and/or conviction. Furthermore, counsel submitted my briefs to the wrong Federal Courts as the law library did not have current Legal Directories. Briefs were supposed to be sent to the Federal Courts in the Monroe Division, whereas, counsel had them mailed to the Federal Courts in the Shreveport Division. Counsel's ineffectiveness, and lack of training in preparing my legal papers coupled with the inadequate law library, caused me to be barred from filing briefs into the Federal and State Courts.

Due to the above reasons, my 40 year conviction for a violent crime stands with no means of getting into the courts.

## THE RELIEF THAT I AM SEEKING

1.  Preserve all library log books or all other documentation concerning the library and/or hearings held at LCIW to further support these claims from 1998 until now.

2.  Up-date all law books, legal directories, and rosters of officials, etc.

3.  Access to legislative tracking, shephardizing, new rulings, newspapers, and all that is on computers for men's institutions.

4. Place computers in library for counsels usage to eliminate costs of ribbon, correction and time.

5. Separation of law library from general library.

6. More space to accommodate compound, counsel substitutes and supervisor in preparation of legal work.

7. Offset counsel substitutes working hours to accommodate counsels who do not have typewriters and/or word processor.

8. Purchase more word processors and/or computers.

9. No retaliation be taken against me for any subsequent filings.

10. Copy machine for the library.

_____

Clara Harris



12 FILE CABINETS    3' X 2½'

DOOR

DESK
3 COMPUTERS
WEST LAW
6' X 3'

DESK
3½'X2'

DESK
3½'X2'

DESK
3½'X2'

FILE
CABINET
3½'X1½'

DESK
2' X 2'

DESK
3½' X 2'

DESK
3' X 2'

DESK
3½' X 2'

SUPERVISOR
DESK
3' X 5'

3' X 2'
COMPUTER
DESK

FILE
CABINET
3' X 2'

DESK
3' X 2'

3 DESKS  7' X 2'

DESK
3' X 2'

DOOR

DESK
3½'X2'

DESK
3' X 2'

MAG.
RACK
2' X 5'

GENERAL LIBRARY BOOK SHELVES 10'X2'

T
A
B
L
E

6'
X
1½'

GENERAL LIBRARY BOOK SHELVES 10'X2'

DESK
3' X 1½'

DESK
3' X 2'

GENERAL
SHELF
9'
X
1'

GENERAL LIBRARY BOOK SHELVES 10'X2'

DESK
4½' X 2'

DESK
3' X 2'

DESK
1½' X 3½'

DESK
3' X 2'

GENERAL LIBRARY BOOK SHELVES 17' X 1'

DOOR
STORAGE ROOM

5/16" = 1'
OVER ALL SIZE OF LIBRARY 31' X 24'

**LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS**
**CORRECTIONS SERVICES**

**CASE NUMBER:  LCIW-2003-153**

**SECOND STEP RESPONSE FORM**
**(HEADQUARTERS)**

TO: <u>LACAZE, PRINCESS    403264</u>
      Inmate Name and Number

<u>LCIW</u>
Living Unit

Response to Request Dated 5/30/03, Received in this Office on 6/6/03:

Your request for administrative review of your ARP #LCIW-2003-153 has been received in my office. Your statements have been considered.  The needs of the Law Library have not gone unnoticed by staff at your facility.  Additional improvements are currently under consideration.  As stated to you by your First Step respondent, two additional counsel substitute trainees were recently assigned to the Library.  We have accepted staff's position on the matter and have found that your First Step Response is clear and concise and has thoroughly addressed your issues.  Administrative intervention is not warranted at this level.

Your request for relief is denied.

<u>         7-21-03         </u>
Date

<u>    Linda Ramsay    </u>
Secretary's Signature or His Designee

06

Exhibit 2A

LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
CORRECTIONS SERVICES
OFFENDERS RELIEF REQUEST FORM

CASE NUMBER: LCIW-2003 -153

TO:  <u>PRINCESS LACAZE 403264</u>          <u>LIBRA 2</u>
        Offender's Name and Number               Living Quarters

                        <u>4/8/03</u>
                     Date of Incident

X                    ACCEPTED:  This request comes to you from the Wardens Office.  A response will be
                     issued within 40 days of this date.

                     REJECTED:  Your request has been  rejected for the following reason(s):


        <u>04/16/2003</u>                                    <u>H MCCORKLE</u>
            Date                                    Warden's Signature or Designee


SECOND STEP

        On  <u>MAY 29, 2003</u> (date), I received a written response to my First Step request.  I am not
        satisfied with this response because  <u>SEE ATTACHED.</u>


        Therefore, I am commencing to the Second Step by sending this form (ARP-1), and a copy of the
        First Step response (ARP-2) to the Secretary of Corrections.  This request must be sent within 5
        days of receiving the First Step response.

        <u>MAY 30, 2003</u>                                    *Princess LaCaze*
            Date                                    Offenders Signature

I am not satisfied with the response because:

1.  Resources are not obtained from alternative sources when needed.  The response time is such that if we even receive the information it is to late to meet our deadline.  It inhibits inmates ability to effectively research and prepare their legal briefs to the courts.

Furthermore, the library has only one (1) Code of Criminal Procedure, 2003 which is kept in the Supervisor's desk to be checked out by the counsel substitutes and other inmates when needed.  There is **NO** Code of Civil Procedures or Rules of Court for 2003.  This further  inhibits the inmates ability to effectively research and prepare their legal briefs to the courts.

2.  The clerical supplies and typewriter ribbons that were recently received and made available, have been used and the library is **again** out of typewriter ribbons.  This further inhibits the inmates ability to prepare their legal work to the courts.  A 156-B was submitted for typewriter ribbons when there were sixteen (16) ribbons in stock for the Brother typewriters.  To date, we have **NO** ribbons in stock and no date as to when the library might receive them.  Obviously, this is a major concern since it virtually stops all progress, which in turn, denies access to the court which is a violation of the inmates rights.

3.  Even though two additional counsel substitutes trainees have been recently assigned to the library, it should be noted that one of the new counsel substitutes only works part time (20 hours maximum); the second new counsel substitute has been assigned to assist in Civil matters and Disciplinary Court relief only.  This second additional counsel substitute is 66 years old with medical restrictions that prevent her from prolong walking or standing and no lifting.

Additionally, a counsel substitute was reclassified out of the law library.

In essence the law library **is still** in need of counsel substitutes.

The library itself has 1081 square feet of floor space.  Within this area of 1081 square feet, there is a table which takes up 50 square feet, bookshelves which take up 200 square feet, file cabinets which take up 45 square feet, a supervisor's work area which takes up 50 square feet, and the library check-in desk which takes up 30 square feet.

In addition, the counsel substitutes have only the following work stations:
 One station contains 3 counsel substitutes in a total work area of 55 square feet; another work station has 2 counsel

substitute in a space of 27 square feet; a third work station
has 3 counsel substitutes in a space of 50 square feet and
a fourth work station has 2 counsel substitutes in a space
of 30 square feet. This leaves 2 counsel substitutes without
any work area.

After taking into account the space for tables, desks, shelves
and cabinets, there is a total of approximately 540 square
feet left in which to move around in the library. This include
not only the 18 inmates who work there, but also the inmates
on the compound who come in to check out books, utilize the
reference books and those who come to work with their counsel
substitute. It remains very difficult to find room enough
to speak at least semi-privately with the clients, as well
as more and more difficult to concentrate with the crowding
and the subsequent noise level.

4. Louisiana Correctional Institute for Women (LCIW) did not
respond to the inconsistent working hours. Specifically, LCIW
Regulation #3-05-001 states:
   **The library shall be open seven days a week, 8:00 a.m.
   until lockdown. During the day, it shall remain open at
   all times."**

The library hours are 10:00 a.m. - 6:30 p.m. during day light
saving time and 8:00 a.m. - 4:30 p.m. from October to April.
However, there are many days in which the library must be closed
because it is used for other purposes, such as parole board
and risk review board. In addition, there are hours through
out the week in which staffing deficiencies require the library
to be closed. Specially training sessions, illness, and
vacations. On those days the library workers are forced to
literally track down someone to open the library. More often
than not this is to no avail. Obviously, this loss of working
hours is a violation of LCIW Regulation # 3-05-001.

LCIW inmates are entitled to the same quality legal assistance
as the men in other D.O.C. institutions. This form of
discrimination inhibits each inmate's right to current law
and quality representation in their legal affairs.

All of the above are on-going issues that have been discussed
at every monthly library meeting since September 2002, and
have yet to be resolved.

*Princess LaCaze*

Princess LaCaze #403264

FORM ARP-2

LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
CORRECTIONS SERVICES

NUMBER   LCIW _ 03 _ 153

# FIRST STEP RESPONSE FORM

Type or use ball-point pen. You must respond to the offender within 15 days of the date the Warden's Office initiated the request.

TO: _____ Princess Lacaze #403264 _____     Libra  2 _____
                   Offender's Name and Number                              Living Unit

FROM: _____ JOHNNIE W. JONES _____     WARDEN _____
                   Person to whom 1st Step is Directed                    Title/Location

                           4/16/03                                4/16/03
Response to Request Dated_____, Received by me_____:

This is in response to your request for relief as to improvements for the Law

Library.  Resource materials not contained in the Law Library are obtained from

alternative sources when needed.  Clerical supplies, including typewriter

ribbons, were recently received and made available.  Two additional counsel

substitute trainees have been recently assigned to the Library.  Additional

improvements to alleviate space concerns are presently under consideration.  Your

request for further remedy is denied.

Prepared By: _____

                   Assistant Warden


5-29-03                                                   _____
Date                                                              Signature


If you are not satisfied with this response, you may go to STEP 2 by filling out the second step section of Form ARP-1 and sending the pink copies of ARP-1 and ARP-2 to the Unit Head. It must be received in the Unit Head's office within 5 days of the date of this response.

**INSTRUCTIONS TO RESPONDENT:** Send original along with STEP 3 and STEP 2 copies to the inmate. Keep Respondent's copy.

**INSTRUCTIONS TO OFFENDER:** This original is for you to keep.

## OFFENDER'S ORIGINAL

ARP-1

## ADMINSTRATIVE REMEDY PROCEDURE

### THIS IS A REQUEST FOR ADMINISTRATIVE REMEDY

<u>Princess LaCaze     #403264</u>                     <u>April 8, 2003</u>
Inmate's Name          DOC #                    Date of Incident/Complaint

<u>L.C.I.W.  -  St. Gabriel, LA</u>
Place and Time of Incident/Complaint

Describe Nature of Complaint (i.e. WHO, WHAT, WHEN, WHERE, and HOW)

This A.R.P. is concerning the law library. Specifically, the

library needs current law books, equipment and supplies,s and more

space for the counsel substitutes to effectively do their jobs. To

date, the library has received no updated law books since August 2002.

Page 2 of this A.R.P. shows a comparison chart between Angola and

L.C.I.W. regarding the law books each institution has.

Continued on Page 2

_Princess LaCaze_ .403264                          4/8/03
Inmate's Signature     DOC #                        Date

TO:_____
       Inmate's Name and DOC #

( )   ACCEPTED:      Please respond to the inmate within 40 days.

( )   REJECTED:      Your request has been rejected for the following reason:

_____

_____

Date                              ARP Screening Officer

Page 2 - A.R.P. - Princess LaCaze  #403264

ANGOLA

Hard Back through 820 So.2d
Soft Back through 827 So.2d Vol 25
Hard Back through 212 F.Supp2d
Soft Back through 227 F.Supp Vol 52
Hard Back through 291 F.3d
Soft Back through 312 F.3d Vol 52
Hard Back through 121 S.Ct.
Soft Back through 123 S.Ct. Vol 5

L.C.I.W.

Hard Back through 815 So.2d
Soft Back through 820 So.2d Vol 33
Hard Back through 26 F.Supp2d
Soft Back - None
Hard Back through 290 F.3d
Soft Back through 295 F.3d Vol 32
Hard Back through 121 S.Ct.
Soft Back through 122 S.Ct. Vol 18

In addition to the above variances, Angola, Hunt, DCI and WCI all have West Law on computer.

The L.C.I.W. library did a fund raiser to raise money to purchase West Law on computer. However, we have no knowledge as to how that money was spent.

Further, counsel substitutes are working with poorly maintained equipment. It seems to be an on-going struggle to maintain our equipment and keep an inventory of the proper supplies that our job demands.

In addition, the lack of working space and inconsistant working hours is not conducive to the counsel substitutes effectively performing their job. It is a fact that during the last ACA audit, Richard Stalder visited the library and mentioned the shortage of space, as well as questioned the counsel substitutes as to why they did not have computers.

Further hindering L.C.I.W. inmates in their right to access to the courts is the violation of L.C.I.W. Reg. #5-05-001-I/M Comprehensive Library Services Program effective date 4/22/02, which states in part, under Part D - Inmate Assistance: "...There shall be at least one counsel substitute for every 100 inmates who shall also assist inmates in special housing units..." There are currently eight (8) full time counsel substitutes available to the compound. In addition, there is one "special" counsel substitute who handles all Impact inmates and one "part-time special" counsel substitute who handles the legal concerns of Antoinette Frank. Therefore, the law library is short two full time counsel substitutes per L.C.I.W. regulations.

L.C.I.W. inmates are entitled to the same quality legal assistance as the men in other D.O.C. institutions. This form of discrimination inhibits each inmate's right to current law and quality representation in their legal affairs.

All of the above are on-going issues that have been discussed at every monthly library meeting since September 2002, and have yet to be resolved.


REMEDY REQUESTED

1. Up-dated/current law books
2. West Law on Computer in lieu of law books
3. Guaranteed minimum number of typewriter ribbons, correction tapes and sundry items
4. That the law library be separated from the general library
5. That two additional counsel substitutes be added to the law library
6. That there be no retaliation against me as a result of this A.R.P.

*Princess LaCaze*

Princess LaCaze  #403264

LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
CORRECTIONS SERVICES
OFFENDERS RELIEF REQUEST FORM

CASE NUMBER: LCIW-2003 -153

TO:   PRINCESS LACAZE 403264                    LIBRA 2
      Offender's Name and Number              Living Quarters

                        4/8/03
                   Date of Incident


    X                ACCEPTED:  This request comes to you from the Wardens Office.  A response will be
                     issued within 40 days of this date.

                     REJECTED:  Your request has been  rejected for the following reason(s):


       04/16/2003                                    H MCCORKLE
          Date                              Warden's Signature or Designee

PRINCESS LACAZE

VERSUS

JOHNNIE JONES, ET AL

NUMBER 510,447 DIV. D (21)

19TH JUDICIAL DISTRICT COURT

PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

### TRAVERSE TO THE COMMISSIONER'S REPORT

NOW INTO COURT comes, Princess LaCaze, who respectfully files her argument in response to the Commissioner's Report dated August 27, 2004 by Rachel P. Morgan.

I.

Administration is well aware of the problems in the library but results are not forth coming. There has been no action taken towards the problems of up dating books, equipment and supplies and more space for counsel substitutes to effectively do their jobs. Even though Westlaw is now available in the library, it does not contain all the necessary books or forms that petitioner or other inmates need.

II.

The women's law library is not as well appointed as the Angola law library in several respects.

1. Angola's library has access to not only Westlaw but books containing law for procedures and otherwise.

The women's law library's access to Westlaw is very restricted. Petitioner can not shepardize case law to determine whether the law is current and up date the law. In addition, petitioner can not determine whether cases have been over turned or have negative history.

Even though the women have Westlaw, there are only three terminals, of which one is broken, for twelve counsels and approximately 1000 inmates to utilize.

This denies petitioner, other counsel and other inmates from properly preparing their pleadings and meeting necessary deadlines.

Petitioner can not show actual injury to any of her

clients because she is forced to submit the proceedings before the deadline or either suffer disciplinary action from her supervisor. Petitioner is forced to work seven days a week to file the necessary pleadings normally on the last day before the deadline. At the present time the actual injury is to the petitioner, who works for weeks on end without a day off and the stress of getting copies and the difficulties of mailing the pleading out at the final hour.

2. Angola's counsel have adequate time day/night to insure that the pleadings, etc. are properly filed. Counsels do not have a specific time for opening nor closing of the work area, nor is it used for other functions.

The women's law library is open from 10 a.m. - 6:30 p.m. during day light saving time and 8 a.m. - 4:30 p.m. during standard time. However, the library does not remain open during these hours. It closes any time the supervisor has to leave and at count times.

3. Angola's counsel specialize in different areas of the law. Furthermore, Angola has counsels that only do rounds to the lockdown areas, others do disciplinary court, others do criminal law or civil law, and others do research.

Petitioner and other counsels at the women's law library have to do one week of disciplinary court, one week of rounds to the lockdown areas and one week of court relief within a eleven week period and work on all types of cases, e.g., criminal, civil, and family.

Petitioner is responsible for roughly one hundred inmates. At the present time petitioner has a total of thirty clients' pleadings pending decisions from the different courts most of which have thirty (30) day appeal deadlines.

4. Angola's library is equipped with computers to prepare legal documents on. Whereas, the women's law library is equipped with only eleven typewriters for twelve counsel substitutes and approximately 900 inmates to utilize of which four are broken. Typewriters make it much more difficult because

you either have to re-type the pleadings each time it goes to the higher court or re-type it each time you make mistakes, and/or add to the pleadings.

Inmates may not be required to type their pleadings to have them accepted by the courts but handwritten pleadings prejudice an inmate.

### III.

Petitioner has proven by the complete record (i.e., ARP, briefs submitted by Debra Rutledge, Attorney for the Secretary, Irma Serf, Classification Officer, and Petitioner) that there was indeed actual injury to the petitioner.

Petitioner can not show actual injury to any of her clients because she is forced to submit the proceedings before the deadline or either suffer disciplinary action from her supervisor. Petitioner is forced to work seven days a week to file the necessary pleadings normally on the last day before the deadline. Presently the actual injury is to the petitioner, who works weeks on end without a day off and the stress of getting copies and the difficulties of mailing the pleading out at the final hour.

### IV.

The complaint made by Petitioner has not been rectified by Administration nor the Department of Corrections.

The following complaints were filed in the original ARP:

| | |
|---|---|
| Current Law Books – | Currently have 3 terminals with Westlaw (one is and has been broken) |
| Equipment – | no changes |
| Supplies – | varies from month to month |
| Space – | Less space due to more counsels |
| Hours – | Inconsistent and not according to Regulation |
| Counsels – | Two new counsels – 12 total |

### V.

The note from Irma Serf, Classification Officer states in a nutshell, "LCIW has not received any new law books. This

alone stipulates an actual injury. It shows that as of that date to this particular date, updated law books have not been received. Therefore making it impossible to complete a proper pleading, to do successful researches. The note only contained a statement about the purchase of up dated law books, but at no time a purchase request has not been submitted into evidence. Typewriter ribbons are again in limited supply, as well as typewriters, of which four are now broken and need repair.

## VI.

On several occasions requests were made for particular materials to help prepare legal documents, which did involve a deadline by the time the specific materials were received at LCIW, the deadline had been passed, and the documents had to be mailed before the expiration of the deadline. Therefore, giving an actual injury to the petitioner, depriving her of the information that was needed. The sanction/prejudice in this case was that the information that was requested was not included in the legal documents. The document in itself was not as strong or developed as it should have been. The sanction could be concluded as a denial in the Judicial System for the undeveloped claim.

There are several basis for an inmates legal documents to be typed rather than hand written. First, when the inmate sends documents that are prepared in written form it gives the aura of prejudice. Therefore, when typed in legal text and formated in proper form the courts see it for what it stands for, not just another Pro Se case from an inmate. In comparison the Court looks for neatly legible formated documents from petitioners, not ones that are in the opposite.

## VIII.

The question of the Library not being open during the proposed hours. The Library has multi-uses which involves Institutional Meetings to Resident Counsel Advisory Meetings which can acquire two to three hours during one day. The Parole/Pardon Board meets within the Library which is prepared

the day prior. This consists of closing the Library early removing furniture (i.e., typewriters, desks, files, and book cases). Then the actual Hearing date the Library is closed the majority of the day, leaving the petitioner no time to catch up or properly prepare any documents for any clients. This shows an actual injury to the petitioner.

IX.

The petitioner states that the only proof that she could submit to this Honorable Court is a denial from the Judicial level. This will show the reason of denial stated as in some cases as "The claim has no merit," "The defendant has failed to prove..." This is based on inadequate materials, and non-sufficient time to prepare from one case to another.

CONCLUSION

Therefore, after a careful consideration of the administrative record and, the law applicable petitioner prays that her Judicial Review be granted. In addition, petitioner prays that this Honorable Court order the Administration of the Louisiana Correctional Institute for Women and the Department of Correction to correct these problems within a timely manner ordered by this Honorable Court.

Respectfully submitted this 10th day of September, 2004.

*Princess LaCaze*

Princess LaCaze #403264
Louisiana Correctional
    Institute for Women
Libra 2-C-3
Post Office Box 26
St. Gabriel, LA  70776

PRINCESS LACAZE

VERSUS

JOHNNIE JONES, ET AL

NUMBER: 510,447   DIVISION D

NINETEENTH JUDICIAL DISTRICT COURT

PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

## J U D G M E N T

This matter came on for final adjudication by this Court.  After a careful de novo consideration of the entire record herein, together with, any traversal timely filed and the Court adopting as reasons, the Commissioner's Report filed herein,

**IT IS ORDERED, ADJUDGED AND DECREED**, that judgment is rendered affirming the Agency's decision dismissing this suit, without prejudice, at Plaintiffs' cost.

READ, RENDERED AND SIGNED, this 27 day of Sept, 2004 at Baton Rouge, Louisiana.

JANICE CLARK,
JUDGE, DIVISION D
NINETEENTH JUDICIAL DISTRICT COURT

I HEREBY CERTIFY THAT ON THIS DATE A COPY OF THE WRITTEN REASONS/JUDGMENT/ORDER/ COMMISSIONER'S RECOMMENDATION WAS MAILED BY ME WITH SUFFICIENT POSTAGE AFFIXED TO ALL PARTIES.
DONE AND SIGNED THIS 5 DAY OF Oct 20__.

Deborah C. Bouy
DEPUTY CLERK OF COURT

7

PRINCESS LACAZE

VERSUS

JOHNNIE JONES, ET AL

NUMBER: 510,447   DIVISION D

NINETEENTH JUDICIAL DISTRICT COURT

PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

## COMMISSIONER'S REPORT

The Petitioner, an inmate in the custody of the Department of Public Safety and Corrections, filed this suit for judicial review of LCIW-03-153, seeking review in accordance with R.S 15:1171 et seq. The Department filed the entire administrative record of the aforementioned ARP, which has been accepted and marked as Exh. A in globo in the record. Both parties were notified of their right to file briefs, and the both briefs have been considered and are in the record for the Court's review. This report is issued on the record alone for the Court's de novo consideration and adjudication of the merits. Petitioner's claim in accordance with law.

## ANALYSIS OF THE FACTS AND LAW

The scope of this Court's review is limited by R.S. 15:1177 A (5) & (9), which states in pertinent part the following:

R.S. 15:1177 A

(5) The review shall be conducted by the court without a jury and shall be confined to the record. The review shall be limited to the issues presented in the petition for review and the administrative remedy request filed at the agency level. In cases of alleged irregularities in procedure before the agency, proof thereon may be taken in the court.

\* \* \* \* \* \* \* \*

(9) The Court may reverse or modify the decision **only if substantial rights** of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

a. In violation of constitutional or statutory provisions.

b. In excess of the statutory authority of the agency.

c.  Made upon unlawful procedure.

d.  Affected by other error of law.

e.  Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

f.  Manifestly erroneous in view of the reliable, probative and substantial evidence on the whole record. ....

In this case, the Petitioner very cogently and apparently correctly complains that the prison law library needs updating, including up to date "books, equipment and supplies and more space for counsel substitutes to effectively do their jobs."[1]  It appears that the administration agrees that there is need for improvement.  It is clear from the record that the law library is cramped, and does not contain the latest up to date books, although both parties state that West law is now available in the library.

While the Petitioner appears to complain that the women's law library is less well appointed than the prison at Angola, the underlying complaint upon which this appeal rests appears to be a violation of access to courts claim. Further, there is no actual evidence in the record to substantiate the facts asserted by the petitioner as to what is offered in the Angola library.

As to the constitutional violation of access to courts claim, I note that the Petitioner has failed to show that her access has actually been diminished or impeded by the shortages and conditions noted by her in her complaint.[2]

"An inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense...prison law libraries and legal assistance programs are not ends in themselves but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts."[3]

The Petitioner does not identify any lawsuit or litigation of any kind that she or other counsel substitutes have been involved in that have been adversely

---

[1] See initial request for administrative remedies.
[2] LEWIS V. CASEY 116 S.Ct. 2174 (1996)
[3] Id. @ p. 2180.

impacted by the alleged library deficiencies, and thus, it is my opinion that she has not carried her burden to show that the Department has violated her constitutional or substantial rights, which are necessary for this Court to overturn the Department's decision. The substance of her complaint appears to have been adequately addressed (if not entirely remedied) by the administration, as shown by the responses in the record.

As noted by the prison Classification Manager, while LCIW had not received new law books within the past 7 months, all counsel substitutes were told that if a book was needed and not available, they could notify the law library supervisor and obtain it.[4]

> "A purchase request is being submitted for updated
> legal books.  As far as typewriter ribbons, we just
> received a big order on 2/6/03....  Two additional
> counsel substitutes will be classified effective 4/29/03".[5]

The petitioner states that on occasion, when she requested books, they were not provided timely, yet she again fails to specify whether a sanction or prejudice was actually suffered in any specific suit.  As to the typewriter/ computer requests, inmates are not required to type their pleadings to have them accepted, as this Court is well aware.   Thus, there is no showing of prejudice in this deficiency.  Further, the Petitioner asserts that the library is not open during all of the hours stated in the prison's regulation from 8 until "lockdown"[6] because of various reasons, including its periodic use for other purposes such as parole board hearings, training sessions, etc.

The Petitioner states that these conditions inhibit access to the courts and the counsel substitute's ability to adequately and effectively assist other inmates in their litigation.  While this may or may not be true, the Petitioner has not provided the necessary proof in the record to support this conclusion.  Finally, the Petitioner complains specifically that the law library does not contain a Code of Civil Procedure or a copy of the Rules of Court.  While these books are

---

[4] See memo from Irma Serf to Asst. Warden Jordan, Exh. A.
[5] Id.
[6] The time of lockdown is not known.

necessary in order to properly prepare pleadings (and in the case of the Rules, some cases criminal pleadings), there is no showing in the record that these books are not made available when needed or that their absence in the library has caused a litigant or the Petitioner to suffer some actual prejudice in a lawsuit or post conviction claim.

As stated above, the jurisprudence on the issue of access to the Courts claims requires a showing of specific prejudice, not just general inadequacies. That evidentiary showing has not been accomplished in the suit. However, this issue may be an ongoing concern, as the prison's apparent failure to provide additional space and/or supplies could result in an actionable complaint of violation of access to courts claim, and thus, if the Court agrees that this suit should be dismissed, it should be dismissed without prejudice so that it may be reasserted if the prison's actions/inactions ultimately cause an adverse decision or ruling by a court as to a particular prisoner.

The burden of proof is on the Petitioner to show in the record a substantial right violation caused by the inadequate facility/resources, etc, and although some of the deficiencies alleged have been acknowledged by the administration, and some of which may be less convenient or time efficient than if more and better supplies and equipment were provided, there has been no evidentiary showing in the record that the Petitioner has been prevented from filing a necessary pleading or has suffered some other specific and adverse decision because of a particular inadequacy or deficiency. Thus, there is no showing of a substantial right violation, no violation of access to the Courts, in the prison's failure to provide a better-equipped law library. While it would be in the interest of all involved to provide a better library, more space, more counsel substitutes, and more books, it is obvious that the prison is aware of the shortcomings and is attempting to make some progress, if slowly.

> "Additional improvements to alleviate space concerns
> are presently under consideration."[7]

---

[7] See Exh. A, first step response by the Warden.

This Court shares the concern of the Petitioner, and notes that additional improvements would be beneficial to all, and if the inadequacies adversely impact a particular person by preventing the filing of a meritorious complaint/pleading or results in its dismissal, the issue may be re-raised in a new administrative complaint. But regardless of the fact that this Court might have decided the issue differently than the Department, unless the decision violates the Petitioner's rights, which has not been shown in the record, this Court is required to affirm the Department's decision.[8]

I note that the both the State and the Petitioner asserts new facts in their briefs, but those facts are not allowed to be considered as evidence by the Court.[9]

Consequently, considering the limitation on review and the fact that there is no showing in the record that the Petitioner has been denied the fundamental right to access the Court or that any inmate that she has assisted has been denied such because of the inadequacies of the law library, I suggest that the Court is bound to affirm the Department's decision.

## COMMISSIONER'S RECOMMENDATION

Therefore, after a careful consideration of the administrative record, the law applicable, and finding that the law and the facts do not allow any relief for the reasons hereinabove stated, it is the recommendation of this Commissioner that the Departments' decision be affirmed and that this lawsuit be dismissed without prejudice at the Petitioner's cost.

---

[8] Save Ourselves Inc., v. La. Environmental Control Comm. 452 So2d 1152 (La. 1984); Stobart v. St DOTD, 617 So2d 880 (La. 1993).
[9] Willis v. Letulle 597 So2d 456 @464 (1st Cir,1992).

Respectfully submitted this 27th day of August 2004 in Baton Rouge, Louisiana.

RACHEL P. MORGAN,
COMMISSIONER, SECTION A
NINETEENTH JUDICIAL DISTRICT COURT

PRINCESS LACAZE

VERSUS

RICHARD STALDER, ET AL

NUMBER 510,447, DIVISION "21"

19TH JUDICIAL DISTRICT COURT

PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

**************************************************************************************

## BRIEF IN SUPPORT OF AGENCY DECISION

MAY IT PLEASE THE COURT;

NOW INTO COURT, through undersigned counsel, comes Richard Stalder, Secretary for the State of Louisiana Department of Public Safety and Corrections, who argues in response to this Court briefing order, that the department's decision to deny plaintiff's relief be maintained.

The petitioner filed an Administrative Remedy Procedure LCIW-2003-153 alleging the law library needed updated books, computers, additional counsel substitutes and etc. As of today, the law library has thirteen (13) trained counsel substitutes, West Law is in place and counsel substitutes as well as general population inmates have access to West Law. The prison has three (3) terminals set up for usage.

While the law library at LCIW did not have the most current books for a short while, inmates were allowed to request a case and copies would be sent to them from headquarters. At no time were the inmates denied access to the courts.

While this court is aware, pleadings of inmates do not have to be typed and can be hand written.

The scope of this Court's review is limited by R.S. 15:1177(A)(5)&(9), which states, in pertinent part, as follows:

(5) The review shall be conducted by the Court without a jury and shall be confined to the record. The review shall be limited to the issues presented in the petition for review and the administrative remedy request filed at the agency level.

&ast; &ast; &ast;

(9) The court may reverse or modify the decision only if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusion or decisions are

a. In violation of constitutional or statutory provisions
b. In excess of the statutory authority of the Agency;
c. Made upon unlawful procedure;
d. Affected by other error of law;
e. Arbitrary or capricious or characterized by an abuse of discretion or clearly unwarranted exercise of discretion; or
f. Manifestly erroneous in view of the reliable, probative and substantial evidence on the whole record.

In this case, the Department's decision is accordance with statutory provisions and is not arbitrary, capricious or manifestly erroneous.  The Department's decision should therefore be maintained dismissing the Plaintiff's suit with prejudice.

Respectfully submitted,

Debra A. Rutledge
Attorney for the Secretary
Department of Public Safety & Corrections
P.O. Box 94304, Capitol Station
Baton Rouge, LA  70804-9304
Bar Roll No. 8432
Telephone Number (225) 342-6959

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the above and foregoing Brief in Support of Agency Decision has been served upon the Plaintiff to this proceeding by mailing a copy of the same to Plaintiff by First Class United States Mail, properly addressed and postage prepaid on this 21 day of _____, 2004, at Baton Rouge, Louisiana.

Debra A. Rutledge

PRINCESS LACAZE

VS.

JOHNNIE JONES, ET AL

NUMBER: 510,447 DIVISION: D (21)

19TH JUDICIAL DISTRICT COURT

PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

O R D E R

Pursuant to the provisions of LSA-R.S. 15:1177 (A)(6), and the Court finding that issues may be satisfactorily and fairly determined upon argument submitted in brief, in lieu of oral argument,

IT IS ORDERED that either party desiring to file their argument in brief shall file such brief with the court within forty-five (45) days of the date of this order outlining their respective legal positions on those issues raised in the Petition for Judicial Review of the Administrative Remedy Procedure properly before this court. The brief may be filed in addition to any brief previously filed. Failure to file a brief within the time limitations set herein may result in a recommendation made by the Commissioner based upon the administrative record, with consideration to any briefs filed previously by either party.

If additional time to file the brief is required by either party, a Motion for Extension of Time should be filed within fifteen (15) days of the date of this Order.

SO ORDERED this ___ day of _____, 2004, at Baton Rouge, Louisiana.

RACHEL P. MORGAN,
COMMISSIONER, SECTION A
NINETEENTH JUDICIAL DISTRICT COURT

I HEREBY CERTIFY THAT ON THIS DAY A COPY OF THE WRITTEN REASONS/JUDGMENT/ORDER/ COMMISSIONER'S RECOMMENDATION WAS MAILED BY ME WITH SUFFICIENT POSTAGE AFFIXED TO: ALL PARTIES.
DONE AND SIGNED THIS ___ DAY OF _____
20___.

DEPUTY CLERK OF COURT

19th JUDICIAL DISTRICT COURT

PRINCESS LACAZE

VERSUS

JOHNNIE JONES, ET AL

NUMBER 510,447 DIV. D (21)

19TH JUDICIAL DISTRICT COURT

PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

### BRIEF IN SUPPORT OF PETITION FOR JUDICIAL REVIEW

NOW INTO COURT comes, Princess LaCaze, who respectfully files her argument in response to the order dated June 25, 2004, issued by this Court, Judge Rachel P. Morgan, presiding.

I

The Defendant, Richard Stalder, through his counsel, Debra Rutledge, filed into the record a true copy of the entire Administrative Remedies Procedure, #LCIW-03-153, and simply denied the allegations that inmates are denied access to the courts.

II

Even though the Louisiana Correctional Institute for Women and the Department have stated that "The needs of the Law Library have not gone unnoticed by staff", and that "Additional improvements are currently under consideration", more than a year later, the Law Library still does not meet the needs of the inmates.

III

There are currently thirteen (13) counsel substitutes, of which two are considered "special", and one of those is only part time.

However, we have only eleven (11) typewriters which must be shared among the thirteen (13) counsel substitutes as well as the approximately eight hundred (800) inmates on the compound. This causes undue wear and tear on the equipment and requires numerous repairs, at which time, we are left with even fewer typewriters in use. Six (6) of the typewriters are approximately ten (10) years old.

Recently, four (4) typewriters were sent out for repair and two (2) were returned in worse condition than before they

were sent for repair.

IV

The counsel substitutes continue to go weeks at a time without typewriter ribbons and clerical supplies. Consequently, this ends all progress, which in turn, denies access to the court which is a violation of the inmates' rights.

V

Three (3) computer terminals with access to Westlaw have been installed in the Law Library. However, we only have access to Constitutions, statutes and case law which limits our research abilities.

Before our law books were removed and the computers installed, we had access to Shepard's Citation; West Digest, State and Federal; Corpus Juris Secondum, but those books are no longer available to us, and the computers do not access the materials that have been removed.

The three (3) computers have no word processing capabilities. They are used strictly for research. These three (3) computers are the only means available for the counsel substitutes and all the inmates on the compound to do legal research.

VI

The Louisiana Correctional Institute for Women inmates are entitled to the same quality of legal assistance as the men in other Department of Correction's institutions. For example, the mens facilities prepares all legal documents on computers. Computers saves time and expense with ribbons and repairs. Furthermore, computers would not have to be sent out of the institution for repairs because there is on site computer personel.

The women are being discriminated against because administration will not allow computers due to inappropriate use that occurred in the education department and garment factory. There is no documentation of misuse of the computer when the general library had a computer. Due to the fact there

is computer personal at this institution all legal work could be monitored.

In addition, the hours are not consistent with the men's institutions. This form of discrimination inhibits each inmate's rights to current law and quality representation in their legal affairs.

## VII

Space also continues to be a major concern in the Law Library. In addition to the thirteen (13) counsel substitutes, there are five (5) "general" library workers.

The Administrative Remedy Procedure will also reflect that the hours of operation are inconsistent and do not meet the Louisiana Correctional Institute for Women Regulation Number 3-05-001 which states that the library shall be open seven (7) days a week from 8:00 a.m. until lockdown. It also states that the library shall remain open during the day at all times.

Staffing deficiencies, training sessions, illness, vacations, pardon board and parole board and waxing of the floor all cause the library to be closed on a regular basis. At the time the Administrative Remedy Procedure was written, we were required to locate someone to open the library on days when the supervisor could not be there. Since the filing, the procedure has changed. We are no longer allowed to be in the library without a supervisor in attendance. Even though on Sundays we are allowed to open the library with no supervisor.

## CONCLUSION

Petitioner respectfully requests this Honorable Court to consider the foregoing argument, as well as the complete administrative record and grant her the relief requested.

Respectfully submitted,

Princess LaCaze #403264
Louisiana Correctional
  Institute for Women
Libra 2-C-3
Post Office Box 26
St. Gabriel, LA  70776

PRINCESS LACAZE            NUMBER 510,447, DIVISION "21"

                                          19TH JUDICIAL DISTRICT COURT

VERSUS                                  PARISH OF EAST BATON ROUGE

RICHARD STALDER, ET AL           STATE OF LOUISIANA
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## ANSWER

    **NOW INTO COURT**, through undersigned counsel, come Richard Stalder, Secretary for the State of Louisiana Department of Public Safety and Corrections, who in response to Plaintiff's Petition states the following:

1.

    Petitioner alleges the law library is inadequate. Pursuant to the Provision of La.R.S.15.1184(A), "[n]o prisoner suit shall assert a claim under state law until such administrative remedies as are available are exhausted." (See also Local Rule XII, §5 "Ordinary Proceedings filed pro se by Offenders/Prisoners").

2.

    Within the Department of Public Safety and Corrections there has been promulgated a number of Corrections Administrative Remedy Procedures, (and subsequent amendments thereto), which originally become effective September 18, 1985, for the purpose of receiving, hearing and disposing of complaints and grievances by inmates. [(See Louisiana Administrative Code (LAC 22:I.325); *Louisiana Register*, LR 11:1089); and, In Re: Louisiana Department of Public Safety and Corrections Administrative Remedies Procedure, CA 85-592-B (M.D. La.)]

3.

    In connection with this Civil Action, Defendants files herewith into the record a true copy of the entire Administrative Remedies Procedure, Number LCIW-03-153 Louisiana Correctional Institution for Women filed by Princess Lacaze, DOC Number 403264.

4.

    Defendant denies the allegations stated herein, specifically that inmates are denied access to the Courts.

**WHEREFORE**, Defendant pray this Response be deemed good and sufficient and that after due proceedings, that Plaintiff's suit be dismissed with prejudice at his cost.

Respectfully submitted,

Debra A. Rutledge
Attorney for the Secretary
Department of Public Safety
    and Corrections
Post Office Box 94304, Capitol Station
Baton Rouge, LA. 70804-9304
Bar Roll No: 8432
Telephone No. (225) 342-6743

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the above and foregoing Answer has been served upon the Plaintiff to this proceeding by mailing a copy of the same to Plaintiff by First Class United States Mail, properly addressed and postage prepaid on this ___ day of _____, 2003, at Baton Rouge, Louisiana.

Debra A. Rutledge

PRINCESS LACAZE

NUMBER 510,447, DIVISION "21"

VERSUS

19TH JUDICIAL DISTRICT COURT

PARISH OF EAST BATON ROUGE

RICHARD STALDER, ET AL

STATE OF LOUISIANA

**************************************************************************

## AFFIDAVIT

**BEFORE ME,** the undersigned Notary, personally came and appeared:

**SONIA FOLMAR**

who, after being first duly sworn, did depose and say that:

She is a Legal Secretary II for the Louisiana Department of Public Safety and Corrections, Legal Services;

The Department of Public Safety and Corrections maintains records of all requests by prisoners for relief through the Corrections Administrative Remedy Procedure, from the initial request at the institutional level though the final response by the Secretary;

The attached is a true and correct copy of Administrative Remedy Procedure No. LCIW-03-153, filed by Princess Lacaze, DOC# 403264, regarding the issues presented in the above-entitled and numbered cause of action.

The above is true and correct to the best of her information, knowledge and belief.

_____
SONIA FOLMAR

**SWORN TO AND SUBSCRIBED** before me, Notary, on his _____ day of _____, 2003, at Baton Rouge, Louisiana.

_____
Notary Public

# ARP
# FIRST STEP INVESTIGATION

**ADMINISTRATIVE REMEDY PROCEDURE & PROPERTY CLAIMS**

**INPUT SCREEN**

DOC #: 403264
LAST NAME: LACAZE
RECORD TYPE: A
INCIDENT DATE: 4/8

ARP NUMBER: LCIW-2003-153

| | | |
|---|---|---|
| STEP 1: | | |
| STEP 2: | | |

COMPLAINT: WE
IF REJECTED RE

4-24-03

Ms Ser:

Investigate and report to me in writing. Return by 4-26-03

Prepared by:_____

Date:

 **LOUISIANA CORRECTIONAL INSTITUTE FOR WOMEN**

*"Corrections' Cleanest Facility and We're Proud of It!"*

**M. J. "MIKE" FOSTER, JR.**
**GOVERNOR**

**RICHARD L. STALDER**
**SECRETARY**

**JOHNNIE W. JONES**
**WARDEN**

July 27, 2000

Princess LaCaze
#403264

RE:    Library

Dear Inmate LaCaze:

Your letter to Deputy Warden Guidroz has been referred to me for handling.  Any problems that inmates have had getting into the library to do legal work is being looked into and will be corrected.  However, inmates cannot sit around on the yard during their free time socializing with their friends and attempt to run in the library when they want to.

The library will remain open specifically through the weekday.  We also have new typewriter for the library that will be in soon for use.

Hopefully, this will resolve the problem.

Sincerely,

Helen Travis
Assistant Warden of Treatment and Social Services

HT:zt

cc:    Ms. Guidroz
       Ms. Serf
       Ms. Christy
       File

 Louisiana Correctional Institute for Women    P.O. Box 26    St. Gabriel, Louisiana 70776    (225) 642-5529 / (225) 319-2757 (Fax)
**AN EQUAL OPPORTUNITY EMPLOYER** 

Princess LaCaze #403264
Libra 2-C-3
Library - Counsel Substitute
July 26, 2000


Dear Deputy Warden Guidroz,

On several occasions, during the past 6 to 7 months, the library has closed during weekends and weekdays. Because of the closing of the law section, several inmates have expressed concern.

Dealing with legal issues means deadlines and constant legal research. When the library is closed it prevents the opportunity to research, which means documents are rejected as out of time.

As a counsel substitute, I have several criminal cases to research for inmates. I can not do the necessary work if I'm denied access to the library. I feel responsible for these cases because they have been assigned to me.

If possible, could the library when closed, be opened for "ONLY" the legal section so that the general compound and myself will have access to the courts.

During my research of other institutional legal library, I have found the hours are extended for inmates who wish to do legal research.

Please, assist me in keeping the law section open during the hours of 8:00 A.M. to lockdown according to page 34 of the Resident Orientation Handbook, 4th Edition, 1998. Also, Regulation # 3-05-001 which states in Part II, LAW LIBRARY OF OPERATION, **THE LIBRARY SHALL BE OPEN SEVEN DAYS A WEEK, 8:00 A.M. UNTIL LOCKDOWN. DURING THE DAY, IT SHALL REMAIN OPEN AT ALL TIMES.**

Currently, there are only 3 typewriters for 1,000 women. The typewriters used in the legal section of the library are out-dated and there is a lack of ribbons. If all necessary (popular) forms are placed on the computer for Counsel's use, it would help in drafting legal documents and the quality of the documents would be more professional.

We are in need of equipment to draft these petitions or the use of the one computer available.

Please, assist me, in providing my peer's with the best possible legal assistance I can give.


Sincerely,


Princess LaCaze #403264

c:file


Mailed   7-26-00



# LOUISIANA CORRECTIONAL INSTITUTE FOR WOMEN

*"Corrections' Cleanest Facility and We're Proud of It!"*

"MIKE" FOSTER, JR.
'ERNOR

RICHARD L. STALDER
SECRETARY

JOHNNIE W. JONES
WARDEN

DATE:    April 26, 2003

TO:    Julius Burns
        Asst. Warden Jordan

FROM:    Irma Serf
        Classification Manager

RE:    Princess Lacaze- ARP LCIW-2003-153

Assistant Warden Burns this counsel substitute is correct when she mention that we have not had any new law books since August 2003.  However, the counsel substitutes have been informed to notify Ms Christy the Library Supervisor, when they need material that is not accessible to them, so that we could get the information from other sources, and this is what she has been doing.  A purchase request is being submitted for updated legal books.  As far as typewriter ribbons we just received a big order on 2/06/03.  The library is supplied with these items.   If we go with Lexius Nexus this would help with the space problem.  Two additional counsel substitutes will be classified effective 04/29/03.

Sincerely,



Irma Serf
Classification Manager



Louisiana Correctional Institute for Women    P.O. Box 26    St. Gabriel, Louisiana 70776    (225) 642-5529 / (225) 319-2757 (Fax)

Form  IJR - 1 (Rev.  1/99)

## NINETEENTH JUDICIAL DISTRICT COURT
## PARISH OF EAST BATON ROUGE
## STATE OF LOUISIANA

PRINCESS LACAZE

SUIT NUMBER_____

(Enter above, the full name of the
plaintiff or plaintiffs in this action.)

### VERSUS

JOHNNIE JONES, WARDEN, LCIW,

DIVISION _____

RICHARD STALDER, SECRETARY

DEPARTMENT OF PUBLIC SAFETY & CORRECTIONS
(Enter above, the full name of the
defendant or defendants in this action.)

## PETITION FOR JUDICIAL REVIEW

I.    Administrative Remedy Action

    A.    Did you present the facts relating to your complaint in the prisoners'
        grievance procedure?
        YES [x]            NO [ ]

    B.    If your answer is YES, what is the number assigned to the prisoners'
        grievance?  (Note: List only one)

        ARP No.  LCIW-2003-153

        Disciplinary Board Appeal No. _____

        Property Claim No. _____

    C.    If your answer is YES:

        1.    What steps did you take? FIRST AND SECOND STEPS ARP

        2.    What was the result?    DENIED

- 1 -

Form IJR - 1 (Rev. 1/99)

II    Previous Lawsuits

A.    Have you begun any other lawsuits in state or federal court dealing with the same facts involved in this action or the same administrative grievance?

YES [ ]    NO [x]

B.    If your answer is YES, describe each lawsuit in the space below.  (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.)

1.    Parties to this previous lawsuit:

Plaintiff(s): N/A_____, DOC # _____

_____, DOC # _____

Defendant(s): N/A_____

_____

2.    Court (If Federal Court, name the District; if State Court, name the Parish):

N/A_____

3.    Docket number: N/A_____

4.    Name of Judge to whom case was assigned: N/A_____

5.    Disposition [for example: Was the case dismissed?  Was it appealed? Is it still pending?]:

N/A_____

6.    Approximate date of filing lawsuit: N/A_____

7.    Approximate date of disposition: N/A_____

-2-

Form IJR - 1 (Rev. 1/99)

III.  Parties

    A.  Plaintiff (Fill in your name, DOC #, and present address)

Name: PRINCESS LACAZE , DOC # 403264

Address: LCIW-LIBRA 2-C-3, POST OFFICE BOX 26, ST. GABRIEL, LA 70776

[In item B below, place the full name of the defendant in the first blank, their official position in the second blank, and their place of employment in the third blank.  Use item C for the names, positions, and places of employment of any additional defendants.]

    B.  Defendant JOHNNIE JONES , is employed as WARDEN

                     at LOUISIANA CORRECTIONAL INSTITUTE FOR WOMEN

    C.  Additional defendants:

        RICHARD STALDER, SECRETARY, DEPARTMENT OF PUBLIC SAFETY

         AND CORRECTIONS

IV.  Statement of Claim

State here as briefly as possible why you believe the final decision by the Department in the administrative remedy action you listed in Part I, above, is incorrect.  (See: La. R.S. 15:1177 and R.S. 49:964).

    Even though the needs of the library have not gone unnoticed and alleged improvements are currently "under consideration", this has been ongoing for over a year with no results.

    Per my second step response I now reiterate that the two new counsel substitutes are not full time nor available for criminal cases.  Specifically, there are only eight full time counsels (one is currently on a court order) who carrys the full work load which includes all criminal procedures, disciplinary court, and rounds to all lockdown areas.  The remaining four counsels are considered as "special", part time, and hold medical restrictions.  One of these four has a release date in September 2003.

    I further reiterate the need for current case law which has been denied since August 2002 which is in violation of BOUNDS V. SMITH, 430 U.S. 817 (1977).

    The second step response did not address the issues of hours and space.  For example the most recent two weeks the library was open for 29 hours over a six day period and 26½ hours over a six day period.

    By not throughly addressing the issues and merely accepting staff's position on these matters, the inmates at LCIW are being denied their rights to current law and quality representation by me as a counsel substitute.

-3-

Form IJR - 1 (Rev. 1/99)

V.   Relief

State briefly exactly what you want the court to do for you.  Make no legal arguments.
Cite no cases or statutes. 1.  Current case law; 2.  10 full time counsels
and 2 special counsels; 3.  Enforce LCIW Regulation on the hours;
4.  Gain space by separating the general and law library; and
5.  This Honorable Court set a deadline for the corrections.

VI.   RULE XII - 19TH JDC RULES - YOU MUST ATTACH TO THIS PETITION A
COPY OF THE FINAL DECISION BY THE DEPARTMENT.

Signed this _____26th_____ day of _____July_____, 20 03 .

_Princess LaCaze_____   DOC # __403264__

_____   DOC # _____

_____   DOC # _____
(Signature of plaintiff or plaintiffs)

VERIFICATION

STATE OF LOUISIANA

PARISH OF __IBERVILLE_____

__PRINCESS LACAZE_____, DOC # __403264_____, being first duly
sworn, under oath says: that he is the plaintiff in this action and knows the content of
the above petition; that it is the true of his knowledge, except as to those matters that are
stated in it on his information and belief, and as to those matters he believes them to be
true.

_Princess LaCaze_____
(Signature of plaintiff)

Subscribed and sworn to me this _19th_ day of _July____, 20 03 .

_____
(Notary Public or other person
authorized to administer an oath)

- SERVICE INFORMATION REQUIRED -
The Plaintiff must provide full names and addresses for service below on all defendants.

JOHNNIE JONES, WARDEN
LA CORRECTIONAL INSTITUTE
  FOR WOMEN
7205 HWY. 74, POST OFFICE BOX 26
ST. GABRIEL, LA  70776

PRINCESS LACAZE #403264
LA CORRECTIONAL INSTITUTE
  FOR WOMEN - LIBRA 2-C-3
7205 HWY 74, POST OFFICE BOX 26
ST. GABRIEL, LA  70776

RICHARD STALDER, SECRETARY
DEPARTMENT OF PUBLIC SAFETY &
  CORRECTIONS
504 MAYFLOWER, POST OFFICE BOX 94304
BATON ROUGE, LA 70804-9304

- 4 -

PRINCESS LACAZE

VS.

JOHNNIE JONES, WARDEN,
RICHARD STALDER, SECRETARY
DEPARTMENT OF PUBLIC SAFETY &
CORRECTIONS

NUMBER:        , DIVISION:

19TH JUDICIAL DISTRICT COURT

PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

## Service Information Sheet

Plaintiff must provide full names and <u>street</u> addresses for service on <u>all</u> defendants:

JOHNNIE JONES, WARDEN, LOUISIANA CORRECTIONAL INSTITUTE FOR

WOMEN, 7205 HWY. 74, POST OFFICE BOX 26, ST. GABRIEL, LA

70776

RICHARD STALDER, SECRETARY, DEPARTMENT OF PUBLIC SAFETY &

CORRECTIONS, 504 MAYFLOWER, POST OFFICE BOX 94304,

BATON ROUGE, LA 70804-9304

PRINCESS LACAZE #403264, LOUISIANA CORRECTIONAL INSTITUTE

FOR WOMEN - LIBRA 2-C-3, 7205 HWY. 74, POST OFFICE BOX

26, ST. GABRIEL, LA 70776

Form IJR - 1 (Rev. 1/99)

# INMATE ASSISTANCE CERTIFICATION

I.   Were you assisted by any inmate in the preparation of, or research for this lawsuit?
     YES [ ]          NO [x]

II.  If your answer is Yes, the inmate who assisted must print and sign his name, along with his DOC #, certifying that he supports the plaintiff's claims herein. If none, print "NONE".

_____          _____
Inmate DOC # & Location (print)                Inmate (Sign) & Date

- 5 -

**THIS IS A REQUEST FOR AN ADMINISTRATIVE REMEDY PROCEDURE**

Annie Mamon #356519
Libra 1-D
April 7, 2010

LCIW Law Library                                    March 3, 2010
Place and Time of Incident/Complaint                Date of Incident/Complaint

I am time barred from the courts due to the incompetency of inmate counsel, Edna Gibson.

Inmate counsel filed my original habeas corpus into the federal court and failed to do the following:  did not send any exhibits to prove the claims were exhausted or to prove my claims; did not include 11 claims out of the direct appeal; did not litigate all the claims from the PCR; did not submit a forma pauperis; improperly filed an extension of time to the Second Circuit Court of Appeal on the PCR; did not file in the proper court - the Notice of Appeal was filed to the Southern District of TEXAS instead of New Orleans; The writ was due on 5-27-05 but was not properly prepared and sent to the court until 7-8-05; improperly filed a Motion To Reconsider the denial of COA which cannot be filed in the federal courts; and added a claim in the COA that had never been litigate prior to the COA filing.  Newly discovered evidence was placed in a federal objection when it must be placed before the district court who sentenced me, within one year from discovering it.  This issue will now be time barred.  I had only one year to file any proceedings to the federal court for them to be heard. I am time barred.  Inmate counsel never informed me of what happened with my case.  It took another inmate counsel to review my case and inform me of such (Deidre Pierre).  Inmate counsel has since been classified out of the library.  I requested her continued assistance on my case but was denied.

This has been an ongoing problem concerning the law library, see previously filed ARPs; LCIW-2003-153;  LCIW-01-60, LCIW-2008-278, & litigation proceedings for Clara Harris V. Department, 12-13-05; Sandra Cordero's ARP and 19th Judicial District Court filings concerning this issue.

Prisoners have a fundamental constitutional right of access to the courts. **BOUNDS V. SMITH**, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977).  The Supreme Court has emphasized that **BOUNDS** "Guarantees no particular methodology but rather the conferral of a capability -- the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts" and "it is that capability, rather than the capability of turning pages in a law library, that is the touchstone." **LEWIS V. CASEY**, 518 U.S. 343, 356, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996).  However, while reaffirming the existence of the right of access to the courts in **LEWIS**, the Court noted that "**BOUNDS** did not create an abstract, freestanding right to a law library or legal assistance, [and] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." Id. At 352.  Rather, to satisfy the "actual injury" requirement under LEWIS, the plaintiff "must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." Id.  In other words, plaintiff has to show that the alleged violation of his rights was "proximately caused" by defendants.

*Exhibit B*

**CRUMPTON V. GATES**, 947 F.2d 1418, 1420 (9th Cir. 1991). The fundamental constitutional right of access to the courts held to require prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law. **YOUNGER V. GILMORE**, 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142, 92 S.Ct. 250.

I have now been incarcerated for 17 years and is currently suffering from high blood pressure and have polycystic kidney disease causing kidney failure. I have been going on several hospital trips and placed on several medications. It is also believed that I have a tumor on or in the adrenaline gland just above the kidney causing further delay in treatment. It is likely that due to the severity of the mess-ups on the inmate counsel's part, I may very well never get out of prison.

## THE RELEIF I AM SEEKING

1. That the State pays for an attorney to take my case in an attempt to properly file necessary writs into the Court and compensate me for harm since my legal woes resulted from inadequate inmate counsels at LCIW.
2. That archives at LCIW be pulled from the year of 1998 through today to prove the merits of my case if need be.
3. That no retaliation be taken against me by any offender or staff member of LCIW as a result of my filing this ARP.
4. That incompetent counsels be removed from the law library at LCIW and from performing legal work relevant to direct appeal, PCR, and habeas so harm is not done to anyone else.
5. That inmate counsels be properly trained in all aspects of the law and required to perform properly prepared writs.
6. That Diedre Pierre be allowed to assist Princess LaCaze, inmate counsel on my case now and in the future. See Regulations B-05-004 & 3-05-001.
7. LCIW and DOC allow past inmate counsels, who's work has been proven to be "Good Work" to assist on cases regardless to the fact that they are not currently working in the library.
8. Compensate counsel for any overtime spent trying to fix this legal mess.
9. Removal of all my legal work from other inmate counsel's computers and file drawers and place on Princess LaCaze computer and in her possession.
10. All costs for copies, court costs, medical expenses be at expense of LCIW and not me past, present, and future.
11. Release from prison and/or allow me to have a kidney transplant if it comes to the point I need a transplant.

*Annie Mamon*

Annie Mamon

CASE NUMBER: LCIW-2010-114
FIRST STEP RESPONSE FORM (FIRST STEP RESPONDENT)

TO: MAMON, Annie #356519                    LCIW (L1 D 02)

Response to request dated 04-07-10, received in this office 04-08-10.

You request Administrative Remedy stating that you "are time barred from the courts due to the incompetency of inmate counsel, Edna Gibson". You allege that she failed to send the courts relevant exhibits; failed to litigate relevant claims from the direct appeal and the PCR; did not submit a forma pauperis; improperly filed an extension of time to the 2nd Circuit; did not file the Notice of Appeal in the proper court; did not properly prepare and send to the court "the writ" due on 05-27-05 in a timely manner; improperly filed a Motion to Reconsider the denial of COA; and added a claim in the COA that had never been litigated before. You suggest that newly discovered evidence was not submitted to the proper court in a timely manner and is now time barred. Finally, you state "inmate counsel never informed me of what happened with my case."

LCIW Policy 3-05-001 says if "an offender is unable to make meaningful use of the Law Library on her own behalf, the additional assistance necessary for effective access shall be provided." The policy clearly states, "Counsel substitutes are offenders who are not permitted to the practice of law, but may assist and aid, without cost, an accused offender in the pursuit of legal claims and/or defenses." Offender counsel substitutes do receive annual training, but at no time does LCIW assert that an offender counsel substitute is trained to take the place of retained legal counsel. You were well aware of this, and you always had the option to seek the assistance of legal counsel (either retained or provided by indigent defenders). Neither the State nor LCIW has the responsibility to pay for an attorney for you.

Offender counsel substitutes are provided with training as required by policy and as needed. Their performance is monitored; and when issues with their work are brought to the attention of the Law Library staff, these are investigated and appropriate action is taken. Edna Gibson began working with you in July of 2002 but has not functioned as your counsel substitute since July of 2005. The "failures" you cited against her took place at least five (5) years ago and should have been addressed at that time.

On 04-08-10 "(a)ll of your legal work (was removed) from other inmate counsel's computers and file drawers and place(d) on Princess LaCaze's computer and in her possession." She can review the work done by both Edna Gibson and Diedre Pierre (and any other counsel substitute who provided assistance to you). She is free to ask any of them for clarification; however, Diedre Pierre at her own request was reassigned out of the Law Library, is no longer a Counsel Substitute, and cannot function as such.

LCIW does not have the authority to release you from prison in the event that you need a kidney transplant but will provide you with all appropriate medical care.

**Your request for Administrative Remedy was denied with explanation.**

Prepared by: _____

                  Asst. Warden M. B. Kennedy

_5/17/10_____        _____
        Date                              Unit Head

<u>Instructions to Offender</u>:    If you are not satisfied with this response, you may go to Step Two by checking below and forwarding this to the ARP Screening Officer in the manila envelope within five (5) days of your receipt of this decision.

Reason:
  See attached.

_____

May 21, 2010_____        _____  356519
        Date                         Offender's Signature - DOC#

Step Two
Annie Mamon #356519

Inmate counsel, Edna Gibson filed my appeals in the State courts and the original habeas corpus into the federal court and failed to do the following:  failed to send exhibits; did not litigate 11 claims that was included in the direct appeal and the PCR; did not submit a forma pauperis; improperly filed an extension of time; did not file in the proper courts; the writ was not properly prepared and untimely filed; improperly filed motions in the federal courts; and added a claim without properly exhausting the claim.  Newly discovered evidence was argued in the federal court instead of properly filing it in the State district court.  I am **now time barred** and inmate counsel Edna Gibson never informed me of what happened with my case.  It took another inmate counsel Deidre Pierre to review my case and inform me of such.

I did not "suggest" newly discovered evidence was not submitted but it was submitted in the wrong court and now it is time barred.  Deidre found the court's decision when reviewing my case.  I could not make meaningful use of the law library on my own behalf, as I haven't been trained as such. Counsels selected by the Warden are trained for doing such and Edna is a veteran counsel.  This veteran counsel was the "additional assistance provided to help whom in turn works/trains/studies under one other "veteran counsel" who can not use the Criminal Code & Procedure (Marjorie Braggs) Several counsels have been such for over 10 years. Had counsels performance been monitored in accordance with policy/regulation, so many ARP's would not have been filed; so many would not have been harmed or had to resort to assistance outside of the law library.  (See previous ARPs mentioned including LCIW-2010-153, LCIW-2010-60, LCIW-2010-089, LCIW-2008-278 and Sandra Cordero V. DOC; sensitive issue ARP filed with the 19th Judicial District Court for D. Pierre bearing Civil # C590543). Edna never told me there was a "problem" nor could she even assist me in accordance with policy or regulation as Edna filed papers in a **TEXAS** court when all is with Louisiana courts.

In further support, offender Taneshia Taylor was denied pauper status as "senior counsel and paralegal" Bobbie Johnson filed into the 14th JDC a forma pauperis using Civil Code of Procedure 5181-5188.  It's apparent counsels cannot use the basic Criminal and Civil Code of Procedure let alone the Louisiana Rules of Court.  The legal program did not get this way over night supporting that supervisors as well are not monitoring anything or she/they would know that for some counsels in the law library, no training would help them as they are simply uneducated and cannot write a simple legal letter.

Since policy basically states counsels don't have to do legal work but only assist/inform clients, this allows a breakdown in the access to the courts for offenders in need of legal help.  Practice makes close to perfect.  Pursuing my legal defenses under a 5 – 10 year plea bargain, IEAOC, Batson (all white jury), Battered Woman's Syndrome and more are forever lost due to the state of LCIW's law library on offenders and staffs part especially since this "practice" has been allowed to go on this way for so long.  If counsel couldn't timely or properly file writs then certainly she could not advise me or anyone else of such.  (See B-05-004) Edna never said she didn't know what she was doing to say she has been counsel for many years.  In addition, Edna handled my case longer than July of 2005.  Since Edna did not keep documentation such as form A's and form B's or logging in logbook, this determination couldn't be properly made.

Asst. Warden Kennedy states when matters are brought to supervisors, it's investigated and proper action is taken.  Deidre brought my situation to the supervisor's attention as well as to Ms. Kennedy and Asst. Warden Moore's around 3-1-10.  The only action taken was classifying Deidre out of the library and deleting legal work.  To my knowledge she did not request any job change from the law library.  She filed an ARP on the matter.  I did request her continued assistance but was denied so its not that she cannot function as counsel.  Staff refuses to let her help for retaliatory reasons.  I should not have to suffer anymore on account of counsels or staff.  Nothing concerning my legal woes was investigated until I filed this ARP.  To this day, Edna still handles legal matters of this caliber and the problem is still apparent.  (See Dawn Hargrave habeas and DB appeals, and restitution appeal that Edna recently filed.)

As for 4-8-10, taking my legal work off of computer is untrue. On 3-17-10, my legal work was moved illegally from Deidre's account to Edna's account. (See 3-05-001 & ARP LCIW-2010-089)  After complaints, Administration did it again placing my work from Edna's account to Princess LaCaze's account. On 5-17-10, Princess received legal work from Edna when Edna should have never had any of my papers since she relinquished my case to me. Deidre should have been the only one to have my legal work. In order for Edna to have such, she would have had to either keep some, lying to me about giving it all back or taking it out of Deidre's legal drawers while she worked on my case since cabinets don't lock. The library supervisors are not trained in law and have numerous administrative duties limiting to her properly being able to monitor the library. This is why cameras were placed in the designated areas.

I am indigent so I cannot afford a lawyer. Had Edna properly and timely filed writs, then and only then could a motion for appointment of counsel be filed. Counsel never ever filed for one probably because she does not know how due to incompetency. Counsel did write attorneys but no luck. Due to the breakdown of access of the courts, counsel must be supplied by the State, LCIW/DOC. Law supports that when a prison system program fails such as law libraries counsels must take over cases. Said attorneys (even pro bono) can come into handle cases further properly training counsels.

The decision by Ms. Kennedy is also biased as she is the Asst Warden/supervisor over the library as well as classification and she rendered the decision on my ARP. She assisted in classifying Deidre out of the law library after she filed an ARP against the library on 3-11-10. Since then several of Deidre's clients such as myself are struck in limbo due to incompetent counsels.

My health is also failing. On the date of receipt of this ARP I came from the hospital. Things are getting worse with my kidneys which is requiring more test, surgery to remove 1 ½ of my kidneys as well as possible surgery to remove part of the liver, yet nothing has been done to assist on my criminal case.

Policy states counsels are trained by senior counsels however Edna is the senior counsel. If her work ethics are of this caliber then one can only imagine the state of other counsels. Records from educational testing in Vo-Tech supports such as most counsels testing score are extremely poor ranging a 5th grade educational level for senior counsels. The same can be proven for Marjorie Braggs, the only other senior counsel who gave incorrect legal information to an offender in lockdown. Hours later the offender committed suicide (9-23-09).

I requested also reimbursements/damages but this was never responded to. I still request such as legal woes are on account of incompetent counsel. Deidre started preparing this ARP that has the date of incident 3-3-10 yet filed 4-7-10. On 3-11-10, Deidre was classified out of the law library as a way to prevent her from shedding light on what's been going on with the law library and client's cases. I once again request her assistance on my case. I should not have to suffer and incompetent counsels must be removed from the library to prevent further harm. In further support of my ARP, I ask that cameras in academic building and old chapel are preserved and that all prior ARP's against the law library be attached to this ARP.

_Annie Mamon_
Annie Mamon #356519

_5-21-10_
DATE

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————

No. 05-30789
USDC No. 3:03-CV-13

———————————

U.S. COURT OF APPEALS
FILED

OCT - 4 2005

CHARLES R. FULBRUGE III
CLERK

ANNIE LEE MAMON,

Petitioner-Appellant,

versus

WARDEN, LOUISIANA CORRECTIONAL
INSTITUTE FOR WOMEN,

Respondent-Appellee.

———————————

Appeal from the United States District Court
for the Southern District of Texas

———————————

Before JOLLY, SMITH, and BARKSDALE, Circuit Judges.

PER CURIAM:

This court must examine the basis of its jurisdiction on its own motion if necessary. Mosley v. Cozby, 813 F.2d 659, 660 (5th Cir. 1987). Rule 4(a)(1)(A), Fed. R. App. P., requires that the notice of appeal in a civil case be filed within thirty days of entry of the judgment or order from which appeal is taken. When a timely Fed. R. Civ. P. 59(e) motion is made, the time to appeal runs from entry of the order disposing of the motion. See Fed. R. App. P. 4(a)(4)(A).

In this habeas corpus case, the district court entered a final judgment on April 11, 2005. On April 25, 2005, the petitioner filed a motion for reconsideration. On April 27, 2005, the district court denied the motion for reconsideration.

*Exhibit C*

05-30789
- 2 -

Accordingly, the final day for filing a timely notice of appeal was May 27, 2005.  The petitioner's undated pro se notice of appeal is stamped as filed on July 8, 2005, well beyond the prescribed time.  <u>See</u> Fed. R. App. P. 4(c)(1).  The time limitation for filing a notice of appeal is jurisdictional, and the lack of a timely notice mandates dismissal of the appeal.  <u>Robbins v. Maggio</u>, 750 F.2d 405, 408 (5th Cir. 1985).

APPEAL DISMISSED.

# KIDD-CULPEPPER

229 SOUTH GRAND STREET
P. O. BOX 3168
MONROE, LOUISIANA  71210

PAUL HENRY KIDD
BOBBY L. CULPEPPER

AREA CODE 318
TELEPHONE 325-3884
FACSIMILE 361-0836

December 13, 2000

Ms. Edna Gibson # 120256
Inmate Counsel Substitute
L. C. I.W.
St. Gabriel, Louisiana 70776

Re:   Annie Mamon

Dear Ms. Gibson:

Annie called me on Monday and told me an important letter was coming and asked me to please respond to same.  I assured her I would.  Now I have received your letter.  I respond to same.

First, let me make a pronunciamento.  You are on the wrong track.  The issue is ineffective assistance of counsel on Ed Henderson's part.  What you are attempting to come up with are facts to demonstrate that Ed did not do his job.  This is an issue that I raised and the court denied.  Annie needs to file a writ of certiorari to the Court of Appeal and to the Supreme Court.  When these remedies have been exhausted, she needs to file a writ for post conviction relief in federal court.  That is where Annie will get relief if she is successful.

Quit fooling around with what happened or didn't happen at trial and get on with exhausting her remedies.  The ground work is already laid out in the post conviction relief petition if filed in trial court.  Just say in the writs the same thing I said in my petition, particularly the Batson information.  Your undertaking is to exhaust Annie's remedies, not to retry the case.

Now to address your specific questions.  You are dead wrong about the State not offering Annie the opportunity to plea to manslaughter.  This is what happened and the exchange of communications occurred primarily between the State and Annie's lawyer, Ed Henderson.  I do not know the extent of what Ed Henderson told Annie.  I am inclined to believe that it was substantially less than what Ed Henderson said and more than that to which Annie admits.  But there was no dispute about the facts.  When Annie would not plea to the original manslaughter charge, the charge was upgraded to second degree murder.  Annie had to have had to plea to manslaughter because she entered a not guilty plea.  However, I doubt that Annie actually understood what was happening.  It was Ed Henderson who would not let her plead to the original manslaughter because Ed Henderson thought she should walk or be acquitted.  This brings us the pre-trial conference -- after the charge was upgraded to second degree murder and just before Annie went to trial.  That pre-trial

Ms. Edna Gibson
December 13, 2000
Page Two

conference involved John Sheehan and Steve Hearn on behalf of the State and Ed Henderson on behalf of Annie and Judge James Dozer. This occurred at the Lincoln Parish Courthouse. Annie was waiting in the courtroom but she was not in the pre-trial conference. The purpose of the pre-trial conference is to try to work out a plea bargain. Everyone agreed that Annie should plead to manslaughter. The hang up was what the sentence should be. Here, there gets to be a dispute about what was agreed upon.

Ed Henderson advises me that he was holding out for a suspended sentence. He says they had finally agreed upon a suspended sentence with the judge when the district attorney, Bob Levy, walked in. Bob Levy withdrew the suspended sentence agreement and insisted upon Annie serving some time -- somewhere between five and ten years. Ed Henderson blew up and the conference ended. The State's version was slightly different. The assistant district attorneys state that they never agreed to a specific sentence and were generally talking about a 5 to 10 year sentence. They agree on everything else.

The big question is what did Ed Henderson tell Annie about what went on in the pre-trial conference and what, if anything, were Annie's options. I have no doubt in my mind Annie could have plead to manslaughter that afternoon with a 5 to 10 year sentence. But what did Ed Henderson tell Annie? Annie says Ed Henderson told her nothing about the plea and simply said that Annie had to go to trial. Ed Henderson insisted he had told Annie everything. The best that Ed Henderson would say was that he could not remember. That's what he testified to at the post conviction hearing.

Therein lies the crux of the case. If Ed Henderson had testified that he had told Annie nothing about her pleading to manslaughter and getting a 5 to 10 year sentence, Annie would have won. Ed Henderson would not testify to that.

I have told you everything I know. There is nothing else I can do.

Yours truly,

*Paul Kidd*

PAUL HENRY KIDD

PHK/lo

cc: Annie Mamon

LAW OFFICES

# KIDD-CULPEPPER

229 SOUTH GRAND STREET
P. O. BOX 3168
MONROE, LOUISIANA 71210

PAUL HENRY KIDD
BOBBY L. CULPEPPER

AREA CODE 318
TELEPHONE 325-3884
FACSIMILE 361-0836

December 4, 2000

Ms. Edna Gibson
Inmate Counsel Substitute
Louisiana Correctional Institute for Women
Post Office Box 26
St. Gabriel, Louisiana 70776-0026

Re:   State of Louisiana
      vs. No. 36,800
      Annie Mamon

Dear Ms. Gibson:

I respond to your letter of November 28 about Annie Mamon.

It is my understanding that the State did, in fact, charge Ms. Mamon with manslaughter. Then, when she refused to plead to manslaughter, the State upgraded the charge to second degree murder. It is my understanding that the original charge of manslaughter was lodged because the State was under the impression that Ms. Mamon would plead guilty.

Concerning the upgrade of the charge to second degree murder, this developed when Mr. Henderson refused to plead Ms. Mamon guilty to manslaughter without receiving a suspended sentence. While the State seemed a bit vindictive on paper, its logic in upgrading the charge is understandable if what the State says occurred. Ed Henderson essentially confirmed this.

I know nothing about the State using false information (stabbing the victim in the back) to get an indictment for second degree murder.

I am convinced the error was ineffective assistance of counsel. I am sorry I could not help you more.

Yours truly,

PAUL HENRY KIDD

PHK/mf

NO. 36,800

ANNIE LEE MAMON

VERSUS

CHARLES "CHUCK" JAMES, WARDEN
LINCOLN PARISH DETENTION CENTER

THIRD JUDICIAL DISTRICT COURT

PARISH OF LINCOLN

STATE OF LOUISIANA

FILED: _Jnuey 20, 1995_          FILED BY: _Linda Cox_

## PETITION FOR POST-CONVICTION RELIEF

1.

Petitioner, Annie Lee Mamon, is in custody of Honorable Charles "Chuck" James, Warden, Lincoln Parish Detention Center in Ruston, Louisiana.

2. _bill of information_

Petitioner was initially indicted on December 4, 1992, for the crime of manslaughter for unlawfully killing Leon Sampson.

3.

The State of Louisiana offered to petitioner a plea bargain, through petitioner's retained counsel Edwin Henderson, to the crime of manslaughter with which the petitioner was charged. Petitioner is unaware of what the plea bargain was because petitioner's retained counsel did not convey the offer to petitioner. On information and belief, it is alleged that the nature of the plea bargain offered had to do with the sentence to be imposed.

4.

For reasons unknown to petitioner, the State of Louisiana decided to empanel a special grand jury on July 7, 1993, to consider upgrading the manslaughter charges against petitioner to second degree murder. However, before the grand jury met on July 7, 1993, the State of Louisiana wrote petitioner's retained counsel, advising

him of the State's contention, and once again offered to accept a
plea of guilty to the charge of manslaughter.   This letter was
written to petitioner's counsel on June 28, 1993.   Petitioner's
counsel never advised petitioner of the State of Louisiana's intent
to upgrade the manslaughter charge to second degree murder or that
petitioner had until July 2, 1993, to enter a plea to manslaughter.

5.

On July 7, 1993, the Lincoln Parish Grand Jury indicted peti-
tioner for the crime of second degree murder of Leon Sampson.   The
indictment for second degree murder was filed in the same criminal
proceeding for murder, i.e., No. 36,800 in State of Louisiana v.
Annie Lee Mamon on the criminal docket of the Third Judicial Dis-
trict Court for Lincoln Parish, Louisiana.

6.

Petitioner was subsequently tried by a petit jury on the second
degree murder charge and was found guilty as charged on August 21,
1993.

7.

On information and belief, petitioner alleges that the State
of Louisiana was agreeable to acceptance of petitioner's plea of
guilty to manslaughter after the indictment for second degree
murder, but before the trial of the matter.   Petitioner's retained
counsel never communicated the State of Louisiana's willingness to
accept such a plea.

8.

On September 15, 1993, petitioner was sentenced to serve a life
sentence for her conviction of second degree murder.

9.

Petitioner shows that the facts of this case may support a conviction of manslaughter. They do not support a conviction of second degree murder.

10.

Petitioner appealed her conviction to the Court of Appeal, Second Circuit. Petitioner's conviction was affirmed by the Second Circuit on December 16, 1994.

11.

Thereafter, petitioner appealed her conviction to the Louisiana Supreme Court on June 2, 1995.

12.

Petitioner began serving her sentence on or about July 5, 1995.

13.

Petitioner was convicted of the crime of second degree murder because she did not receive effective assistance of counsel in the following particulars, to-wit:

A.   Her retained counsel failed to communicate the plea bargain offered by the State of Louisiana to petitioner;

B.   Her retained counsel failed to explain to petitioner what petitioner could receive under the sentencing guidelines as a first offender if she plead to the crime of man-slaughter;

C.   Her retained counsel failed to communicate to petitioner that the State of Louisiana intended to try to upgrade the charges from manslaughter to murder if petitioner did not plead to manslaughter by a date certain;

D.    Her retained counsel failed to apprise petitioner of the consequence of an upgrading of the charge from manslaughter to second degree murder;

E.    Her retained counsel agreed to a jury trial date of August 16, 1993, before petitioner was indicted for second degree murder without asking for petitioner's consent;

F.    Petitioner did not knowingly and intelligently chose to go to trial in lieu of pleading guilty to manslaughter;

G.    Her counsel did not properly prepare the record and present effective argument on the bill of exception grounds on other crimes evidence;

H.    Her counsel did not properly prepare the record and present effective argument on the bill of exception grounded on her *Batson v. Kentucky*, *476 U.S. 79, 106 S.Ct. 1712 (1986)* and *La. C.Cr.P., Art. 795(C)*;

I.    Her counsel did not properly present evidence at the trial of this matter on the battered woman syndrome;

J.    Other matters which will be shown at the trial of this matter.

14.

Petitioner attaches hereto the following documents:

A.    The original indictment herein of December 4, 1992;

B.    The second indictment herein of July 7, 1993;

C.    Letter from John L. Sheehan to Edward Henderson dated June 28, 1993;

D.    Minutes of Court relative to trial and sentencing;

E.    Court of Appeal's decision of December 16, 1994; and,

F.    The Louisiana Supreme Court's denial of writs on June 2, 1995.

WHEREFORE, petitioner prays that she be granted post-conviction relief and that her conviction be set aside.

Petitioner prays further for such further and general relief to which she is entitled in the premises.

Respectfully submitted,

PAUL HENRY KIDD
KIDD-CULPEPPER
Post Office Box 3168
Monroe, Louisiana 71210
(318) 325-3884
Bar Roll No. 7359

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been mailed to Robert W. Levy, District Attorney, P.O. Box 777, Ruston, Louisiana 71273-0777, by placing same in the United States Mail, postage prepaid, on this the 18th day of July, 1995.

PAUL HENRY KIDD

STATE OF LOUISIANA

PARISH OF LINCOLN

## VERIFICATION

BEFORE ME, Notary Public, personally came and appeared ANNIE LEE MAMON, who after first being duly sworn by me did depose and say that:

The above affiant is the Petitioner in the foregoing petition, and all of the facts and allegations contained therein are true and correct to the best of her knowledge and belief.

_Annie Lee Mamon_
ANNIE LEE MAMON

SWORN TO AND SUBSCRIBED before me, Notary Public, on this _19TH_ day of July, 1995.

_____
NOTARY PUBLIC

NO. 36,800

ANNIE LEE MAMON                          THIRD JUDICIAL DISTRICT COURT

VERSUS                                   PARISH OF LINCOLN

CHARLES "CHUCK" JAMES, WARDEN
LINCOLN PARISH DETENTION CENTER          STATE OF LOUISIANA

FILED: _____          FILED BY: _____

<u>O R D E R</u>

Considering the foregoing verified petition for post-conviction relief, it is,

ORDERED that Honorable Charles "Chuck" James, Warden, Lincoln Parish Detention Center, through the Third Judicial District Attorney, Robert W. Levy, file appropriate responsive pleadings to the foregoing petition within fifteen (15) days from this date.

ORDERED FURTHER that respondent produce petitioner in Courtroom No. ____, on the ____ day of August, 1995, at _____ o'clock _____, M., and show cause why petitioner's Petition for Post-Conviction Relief should not be granted and why petitioner's conviction should not be nullified and otherwise set aside.

Signed, this ____ day of July, 1995, at _____, Louisiana.


_____
JUDGE PRESIDING

IN THE

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA


NUMBER: _____


ANNIE LEE MAMON
Petitioner

versus

JOHNNIE JONES, WARDEN &
Respondent


BRIEF OF PETITIONER

      The Petitioner, Annie Lee Mamon, files her contentions and arguments in her Appeal from the judgement of the Third Judicial District Court,  the Second Circuit Court and the Louisiana Supreme Court, refusing Supervisory Writs requesting Order of Remand of Post-Conviction Relief on or about November 9, 2001.

STATEMENT OF THE CASE

Annie Lee Mamon, known hereinafter as the petitioner was indicted on December 4, 1992, for the offense of manslaughter as defined by the Louisiana Revised Statute 14:31.

Petitioner was subsequently re-indicted by a special grand jury on July 7, 1993 approximately seven (7) months from the first indictment.

Second degree murder as defined by the Louisiana Revised Statute 14:30.1, Petitioner appeared for arraignment for the charge of second degree murder on July 12, 1993, at which time petitioner entered a plea of not guilty, and reserved the right to trial by jury. The trial was fixed for August 16, 1993, jury selection continued until August 19, 1993. Petitioner was found guilty and sentenced to life imprisonment without the benefit of parole, probation or suspension of sentence.

Petitioner appealed to the  Second Circuit Court Appeal, where the trial court's ruling was affirmed on December 16, 1994. Petitioner then filed Application for Post-Conviction relief in the Third Judicial District Court on July 25, 1995. A hearing was held and taken under advisement, said Application for post-conviction was denied on October 27, 2000.

Writs were filed to the Second Circuit Court of Appeals on December 27, 2000 and was denied on February 01, 2001. Petitioner then filed Writs to the Louisiana Supreme Court in March 2001, said Writs were denied on November 9, 2001, no reasons given for denial.

Petitioner filed Motion to give reason for denial in November 2001, as of this day no ruling has been given.

(1)

## ISSUE I

THE PROSECUTION VIOLATED PETITIONER'S CONSTITUTIONAL RIGHT TO A JURY TRIAL,
REFLECTING PROSECUTORIAL VINDICTIVENESS THAT DENIED HER DUE PROCESS OF LAW.

The sole reason for the second indictment was to force petitioner to enter a plea of guilty to the original indictment of manslaughter. This tactic was to discourage petitioner from exercising her right to a jury trial that is a constitutional right that's governed by the State and the United States Constitution.

To induce petitioner's counsel to plea guilty to the charge of manslaughter the prosecution made numerous threats of upgrading the charge and he carried out that threat by forming a special grand jury under the pretense that the state had discovered new evidence that the victim was stabbed in the back a tactic that the State knew was false and that this would influence the jury to indict petitioner of second degree murder.

Second degree murder if convicted carries a mandatory life sentence, without the benefit of parole, probation or suspension of sentence. Manslaughter if conviction carries up to forty (40) years.

The prosecution made statements in a manner calculated to inflame the grand jury unfairly against petitioner.

In United States v. Basturto, 497 F.2d 781, Due process considerations prohibits the government from obtaining an indictment based on known perjured testimony. In his brief the Assistant District Attorney admitted to giving information to the special grand jury that he knew was false and would influence them to indict petitioner to second degree murder. The Assistant District Attorney stated that he had just received an autopsy report that proved that petitioner "stabbed the victim in the back."

The prosecution willfully presented false information before the second grand jury to use as leverage to force petitioner's attorney to plea guilty to manslaughter.

The second indictment was purely the result of prosecutorial vindictiveness.  The United States Fifth Circuit Court has addressed this legal issue in Jackson v. Walker, 585 F.2d 139 (1978), a case which arose in Louisiana there, the Fifth Circuit referred to Blackledge v. Perry, 147 U.S. 21, 94 S.Ct. 2098, 40 L.Ed2 628 (1974).

Courts have also held that a prosecutor may not make statements or argue in a manner calculated to inflame the grand jury unfairly against an accused United States v. Serubo, 604 F.2d 807, 818 (1979).  In order for the prosecution to get the second grand jury to indict, the prosecution used false information that he knew would prejudice the jury against the petitioner.

Federal indictment, like Louisiana, will not be dismissed for prosecutorial misconduct absent showing that misconduct adversely affected integrity of grand jury.

Attached is documents from the prosecution in his own words that he presented to the second grand jury the autopsy report that the state presented that would prove the victim was stabbed in the back, plus letters to petitioner's attorney willing to  plea with petitioner's attorney days before trial commenced, if petitioner would enter into a plea of guilty to manslaughter. (See attached marked as exhibits A, B, C, etc..)

(3)

<u>CONCLUSION</u>

WHEREFORE, Petitioner is entitled to have her Petitioner for Habeas Petition Granted under the United States Constitution.

    Petitioner contends that it would be a miscarriage of justice to deny her petition without weighing the law.

Respectfully submitted:

Annie Lee Mamon, #356519
La. Corr. Inst. For Women
P.O. Box 26     L-1
St. Gabriel, La. 70776
pro se

Date

January 03, 2002.

(5)



**DIANA PRATT-WYATT, CLERK OF COURT**
Court of Appeal, Second Circuit
430 Fannin Street - Shreveport, LA 71101-5537
318-227-3700

Annie Mamon Cooper                              Date:   May 21, 2003

LA Corr Inst for Women

P.O. Box 26    L-1

St. Gabriel, LA 70776

RE:   Cooper vs. Cooper

Your writ application has been returned to you this date because of one or more of the items listed below.

_____   You failed to sign your application.

_____   Our records indicate you currently have an appeal pending or due to be lodged in the near future in this court.

___X___   This application is civil in nature, and you have failed to include either a filing fee of $67.00 or proof of pauper status in the form of an order signed by the trial court judge.

_____   Your application does not include the name of the trial court, the parish, the trial court judge's name and/or the trial court number.

___X___   Other   Your motion for appeal must be filed in the district court.

Clerk of Court



**United States District Court**

OFFICE OF THE CLERK

**Western District of Louisiana**

July 11, 2005
RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
SHREVEPORT, LOUISIANA

DATE _____

**BARRY K. JOFFRION**
**Deputy Clerk**
Phone: (318)676-4272

300 Fannin Street, Suite 1167
Shreveport, LA 71101-3083
Fax: (318)676-3962

05-30789

U.S. COURT OF APPEALS
RECEIVED
JUL 1 9 2005
NEW ORLEANS, LA

Hon. Charles R. Fulbruge, III, Clerk
U. S. Court of Appeals - Fifth Circuit
600 Camp Street, Room 102
New Orleans, LA  70130

Attn:     Ms. Melissa Courseault

RE:     Annie Lee Mamon vs Johnnie Jones, Warden
        USDC# 3:02cv0013

Dear Sir:

In connection with this appeal, the following items are being transmitted.  Please acknowledge receipt on the enclosed copy of this letter.

        Certified copy of the Notice of Appeal by Annie Lee Mamon on 7/8/05.

        Certified copy of the docket entries.

In regard to this notice of appeal, the following information is furnished:

        The Honorable Dee D. Drell. entered the judgment being appealed.

        The appeal filing fees have not been paid.

        COA referred to Judge Drell.

                        Sincerely,

                        ROBERT H. SHEMWELL, Clerk of Court

                        BY:_____ S/Barry K. Joffrion _____
                                Barry K. Joffrion, Deputy Clerk

bkj
Enclosures
cc:     Hon. Dee D. Drell
        Marcia Leleux
        Mamon; Strider; Stewart

DC COPY

RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
ALEXANDRIA, LOUISIANA
DATE _____ 3, 15, 05
BY _____

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

ANNIE LEE MAMON,                    CIVIL ACTION
            Petitioner              SECTION "P"
                                    NO. CV02-0013-M
VERSUS

JOHNNIE JONES, WARDEN,              JUDGE DEE D. DRELL
            Respondent              MAGISTRATE JUDGE JAMES D. KIRK

SUPPLEMENTAL REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by pro se petitioner Annie Lee Mamon ("Mamon") on January 3, 2002. A Report and Recommendation to dismiss Mamon's petition was filed on August 27, 20004 (Doc. Item 13). Mamon filed an objection to the recommendation which was referred to the undersigned for further consideration.

First Objection - Prosecutorial Vindictiveness

Mamon contends in her objection that the prosecutor violated her right to a jury trial by "tainting procedural process from the beginning when the prosecutor went through great lengths to force petitioner's attorney to plea[d] guilty to manslaughter, denying petitioner the option to go to trial." Mamon alleges the prosecutor knowingly misinformed the second grand jury in order to re-indict Mamon for second degree murder, an upgrading of the original manslaughter charge. As stated in the original Report and Recommendation, it was entirely within the prosecutor's discretion

to re-indict Mamon with a more severe charge.

Mamon also contends the prosecutor misled the second grand jury by stating he had "new evidence," an autopsy report, to support an indictment of second degree murder, but that he only had the original autopsy report and, therefore, lied about having new evidence.  However, it is noted that, in the State's brief following the hearing on post-conviction relief, the prosecutor stated he did not have the autopsy report at the time Mamon was first indicted, and therefore the autopsy report was "new" evidence which was presented by the State, for the first time, to the second grand jury.

Mamon also appears to argue the autopsy report was exculpatory because it showed the victim had a second stab wound in the back which appeared to have been inflicted prior to the incident resulting in the victim's chest wound.  However, the autopsy report actually states the second stab wound was in the victim's left upper arm and appeared to have been inflicted several days prior to the stab wound in the left upper chest which caused the victim's death.[1]  Therefore, the autopsy report was not exculpatory because it indicated the wound inflicted by Mamon caused the victim's death.

---

[1] Mamon also contends the "new evidence" (the autopsy report) was "Brady material" which the prosecutor failed to give to the defense attorney.  However, the autopsy report was not exculpatory and, therefore, was not "Brady material".  See Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-07 (1963).

2

This objection is meritless.

<u>Second Objection - Ineffective Assistance of Counsel</u>

Mamon also contends in her objections that she had ineffective assistance of counsel in her 1993 criminal proceedings because her attorney failed to inform her about the offer of a plea agreement for manslaughter. Mamon relies on the fact that her attorney was disbarred in 2002 due to his mishandling of three civil cases from about 1992 through 1997.[2]

Although Mamon raised this claim in her state court application for post-conviction relief, she did not raise it in her habeas petition before this court. Instead, Mamon raises it for the first time in this court in her objection to the original Report and Recommendation. Therefore, this issue is not properly before the district court and should not be considered. <u>Banks v. Dretke</u>, 383 F.3d 272, 277 (5th Cir. 2004); <u>Finley v. Johnson</u>, 243 F.3d 215, 219 n.3 (5th Cir. 2001); <u>U.S. v. Armstrong</u>, 951 F.3d 626, 630 (5th Cir. 1992).

Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Mamon's Section 2254 petition for writ of habeas corpus be DENIED AND DISMISSED WITH PREJUDICE.

---

[2] <u>In re Henderson</u>, 1999-3593 (La. 5/26/00), 761 So.2d 523; <u>In re Henderson</u>, 2002-0903 (La. 6/6/02), 819 So.2d 296; <u>In re Henderson</u>, 2003-0876 (La. 9/25/03), 856 So.2d 1154.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 15th day of March, 2005.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE

4

DEPARTMENT OF
# PUBLIC SAFETY AND CORRECTIONS



M. J. "MIKE" FOSTER, JR., GOVERNOR

RICHARD L. STALDER, SECRETARY

November 2, 2001

Annie Mamon
DOC# 356519
L.C.I.W.
P.O. Box 26
St. Gabriel, LA 70776

Dear Ms. Mamon,

Your application is being returned for the following reasons:

_____ Required attachments omitted (see highlighted on application).

_____ Required attachments omitted, **Master Prison Records and Time Computation Papers MUST BE FROM THE CURRENT 2001 YEAR AND NO EARLIER THAN 3 MONTHS PRIOR TO THE MONTH APPLYING FOR CLEMENCY.**

_____ **MASTER PRISON RECORDS <u>ARE NOT</u> FROM THE CURRENT 2001 YEAR AND/OR NOT DATED ANY EARLIER THAN THREE MONTHS PRIOR TO APPLYING FOR CLEMENCY.**

_____ Signature of classification officer or warden needed.

_____ **Senate Bill 239 does not pertain to the Louisiana Board of Pardons, See attached memo.**

_____ Must use the <u>current enclosed application</u> with the revised rules and regulations.

_____ Brief narrative omitted

__X__ May apply after serving fifteen years from the date of a LIFE sentence.

_____ According to our records you are not eligible to apply until_____.
(see attached letter)

_____ Information not correct on application

Application must be completed in its entirety before it can be processed.

Yours for a Better Criminal Justice System,
Irvin L. Magri, Jr.
Chairman, Louisiana Board of Pardons

ILM/

RECEIVED

JUL 25 2005

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

July 15, 2005

3:02-0013
ScP

Dear Clerk of Court,

Please advise me of my next step, I'm not that familiar with the law, but I am filling prose and I need to know what is required of me.

Today I recieved a document from Court, attached is a copy.

It says something about a filling fee. Please let me know what the fee is.

I did file "pauper" in District Court.

Thank you for your time and consideration.

Respectfully,
Annie Mamon
Annie Mamon

